The F. A. Drew Glass Co., Appellant, v. E. T. Baldwin, Defendant, and G. C. Heard, Interpleader Respondent.

Kansas City Court of Appeals, June 6, 1887.

1. Assignment — Estate and Status of Assignee — Subsisting Liens. In the case of an assignment for the benefit of creditors, the assignee succeeds only to the rights and title of the assignor, and acquires no greater or other rights and interests than those held by the assignor at the time of the execution of the deed of assignment. The assignment does not destroy nor affect any valid subsisting lien at the time of the assignment, and the assignee takes the estate *cum onere*, and a mortgagee, or person *sui generis*, may prove up their claims under the assignment, without abandoning their prior lien.

2. —— Attaching Creditor — Effect of Proving Claim Before Assignee.—But in the case of an attaching creditor presenting his claim to the assignee for allowance, the presumption of law would be that when the creditor thus presented his claim for judgment,

without reserving his rights under the attachment, he had elected to abandon the proceedings in attachment, and come in to share with the other creditors *pari passu* under the deed.

3. ————⁴———— Effect of Asking Allowance as to Subsequent Action.—In the case of an attachment suit brought before assignment, a mere verbal assent to the deed of assignment after the service of the writ must defeat the attachment; and if given before the commencement of the action, would debar the plaintiff from making the attachment. By accepting the trust of assignment he is bound to take ratably with the other general creditors,. and by so doing also waives his special lien on the property. A person claiming under an instrument shall not interfere by title paramount to prevent another part of the instrument from having effect according to its construction; he cannot accept and reject. the same instrument. Where a party has accepted an assignment, he cannot then proceed as if he had not done so; and, in such a case, the assignee has a remedy by injunction to restrain him from further action. (Ellison, J., dissents).

Appeal from Pettis Circuit Court, Hon. John P.. Strother, Judge.

*Affirmed.*

The case is stated in the opinion.

W. S. Shirk, V. E. Shaw, C. L. Jackson, for the appellant.

I.   An assignee takes the assigned property subject to all liens upon it. Burrill on Assign., sect. 391, and cas. cit. ; *Clark v. Flint*, 22 Pick. 33 ; 19 Am. Dec. 395 ; *State ex rel. v. Rowse*, 49 Mo. 586, 592, 593.

II.   The fact that appellant presented his claim to the assignee, and prosecuted it to allowance, did not estop him from prosecuting his prior attachment, nor did it work a dissolution of the same, so as to release the attached property. *Bank v. Lewis*, 8 Pick. 113 ; *Cloverdale v. Wilder*, 17 Pick. 178 ; *Barnes v. Fisher*, 9 Mo. App. 574. The case of *Valentine v. Decker* (43 Mo. 583), and other cases where creditors attack an assignment for fraud, and at the same time claim benefits under it, are wholly inapplicable to this case.

III.   Having attached but a part of the property assigned, appellant was entitled to have his claim allowed against the assigned estate, so as to get the benefit of the part not attached, to apply on any part, of his debt, not paid by the proceeds of the attached property.   And such presentation is not a waiver of his attachment lien, nor a dissolution thereof.   Burrell on Assign., sect. 116, and authorities cited.

IV.   The doctrine of election does not apply to the facts of this case.   The fact that appellant procured the allowance of his claim against the assigned estate, was not tantamount to an election to waive the lien of his attachment, nor to dissolve the same.

V.   Being a prior attaching creditor, by pressing his attachment lien to judgment he does not attack the assignment.   He stands much in the position of a creditor secured by collaterals, prior to the assignment.   Such a creditor is not required to give up his collaterals before being entitled to the allowance of his claim against the assigned estate, even if the collaterals he holds are part of the assigned estate.   Nor is a prior attaching creditor. Burrill on Assign., sect. 440.

VI.   A prior attaching creditor, who has secured rights, and incurred liability and expense, is not compelled to elect whether he will stand upon his attachment or dismiss it.   He may press his rights under the attachment suit, and reap all of its benefits, and look to the assigned estate for his ratable dividend upon the balance, if his debt is not paid in full by the attached property.

VII.   The interplea is, in effect, an action of replevin for the attached property.   *Spooner v. Ross*, 24 Mo. App. 599.  And the assignee was estopped by the stipulation incorporated in his interplea from maintaining a replevin suit in direct violation of the spirit of that stipulation.

Louis Hoffman and E. J. Smith, for the respondent.

I.    The prosecution of the attachment suit is inconsistent with the prosecution of the claim for the same money against the trust fund in the hands of the assignee, and the attaching creditor must elect between the two. The assignment is a single thing, and passes the attached property with only a little else, and when the creditor ratifies the assignment in part, as he does by proving up his claim, both on which he has so attached, and another claim, he must ratify in full.    He cannot hold it good in part and bad in part.    Burrill on Assign., sect. 476, [3 Ed.] p. 652; *Geisse v. Beall*, 3 Wis. 367; *Jeffries' Appeal*, 33 Pa. St. 39; *Valentine v. Decker*, 43 Mo. 583; *Douglass v. Cissna*, 17 Mo. App. 44; *Gutzwiler v. Lackman*, 23 Mo. 168.

II.    The appellant did elect to ratify and confirm the assignment, and to take under it.    And having done so, is precluded from further prosecuting the attachment, and the interpleader assignee is entitled to the property and its proceeds.    *Jeffries' Appeal*, 33 Pa. St. 39; *Jones v. Tilton* (S. C. Mass.) 1 N. E. Rep. 741, and cases; *Frierson v. Branch* (S. C. Ark.) 3 Cent. Law Jour. 334, and cases.    This case is a review of the whole doctrine and nearly all the cases.    It cites *Streatfield v. Streatfield*, 1 Swanst. 447; Lead. Cas. in Eq. (Hare & Wallace notes), 252, and cases; Bispham's Prin. Eq., sects. 295 and 306; *Birmingham v. Teivward*, 2 Schoales & Leafroy, 448; *Treke v. Barrington*, 3 Brown's Chan. 275; *Adlum v. Yard*, 1 Rawle, 163; Perry on Trusts, sects. 596, 597; *Harrison v. Mack*, 10 Ala. 185; *Gutzwiler v. Lackman*, 23 Mo. 168; *Pratt v. Adams*, 1 Paige, 615; *Burrow v. Alter*, 1 Miss. 424; *Jewett v. Woodward*, 1 Edw. Ch. 195; *Lanaham v. Latrole*, 7 Md. 268; *Linny v. Bibeau*, 2 Minn. 293; *Scott v. Eads*, 3 Minn. 387; *Merrell v. Englesby*, 28 Ver. 150; *Geisse v. Beall*, 3 Wis. 391; *Moule v. Buchanan*, 11 Gill and John. 314; *Swanson & Gray v. Tarkington*, 7 Heiskell, 612; *Irwin*

*v. Tabb,* 17 Serg. & Raw. 422; *Maynard v. Maynard,* 4 Edw. Ch. 711; Burrill on Assignments, p. 527, note 1; *Gummersell v. Hanbloom,* 19 Mo. App. 274; *Pierce v. O'Brien,* 129 Mass. ——; *Chaffee v. Bank,* 71 Maine, 514; *Stoller v. Coats, Assignee,* 88 Mo. 514; *Eppright v. Kauffman,* 90 Mo. 25.

III. Every creditor must assent to, or dissent from, the deed of assignment, "and such assent, if given before the commencement of an action, will debar plaintiff from making any attachment; and being given afterwards, must defeat the attachment." *Jones v. Tilton,* (S. C. Mass.) 1 N. E. Rep. 741; *Valentine v. Decker,* 43 Mo. 583.

PHILIPS, P. J.—This controversy arises out of the attachment proceedings of the plaintiff against the defendant, Baldwin, and an interplea filed therein, by Heard, the assignee of Baldwin, under a deed of assignment. The attachment was brought on the seventh day of January, 1885. Among the grounds alleged in the affidavit is, that the defendant is about to fraudulently convey and *assign* his property and effects so as to hinder and delay his creditors. On the following day the defendant made an assignment of all his property, for the benefit of all of his creditors, to the interpleader herein. Under the writ of attachment, the sheriff seized "nearly all of the property afterwards assigned." The assignee duly qualified and entered upon his duties. On the thirteenth day of February following, the plaintiff came in and presented this very claim, together with another held by him against the insolvent, to the assignee for allowance. On its rejection by the assignee, he appealed to the circuit court, where the claim was duly allowed, and judgment rendered. After this, when the attaching creditor was about to proceed to enforce his attachment, the assignee interposed an interplea, setting up the facts aforesaid, claiming the property. To this interplea the plaintiff demurred.

The court overruled the demurrer, and the plaintiff has appealed to this court. I make no question as to the general rule, that an assignee succeeds only to the rights and titles of the assignor, and that he acquires no greater or other rights and interests than those held by the assignor, at the time of the execution of the deed of assignment. Nor do I make any question as to the correctness of the rule that an assignment does not destroy nor affect any valid subsisting lien at the time of the assignment; and that the assignee takes the estate *cum onere*. But I do not think the class of cases pertinent to this controversy, which hold that a mortgagee, or person *sui generis*, may prove up their claims, under the assignment, without abandoning their prior lien. In such cases there is a method, known to and practiced by the courts of equity, by which the court may ascertain and determine the *pro rata* share in the distribution of the assets, and the amount for which such prior lienor may enforce his lien.

The proceeding is entirely equitable, where the rights and interests of the prior lienors and the subsequent beneficiaries under the deed of assignment may be asserted and adjusted, *ex aequo et bono*. But in the case of an attaching creditor no such methods are known, because they would be utterly impracticable. And hence the appellant very prudently pretermits any discussion of this matter by saying it is not presented for consideration. But I respectfully submit that this question is necessarily involved in the discussion, as its solution will demonstrate the impracticability of the rule established by the opinion. It leads to such obvious absurdity, as to satisfy my mind that it cannot be the law. When the plaintiff presented his claim for allowance, the only question for the determination of the assignee was as to its justice; was it owing by the defendant to the plaintiff? The presumption of law would be that when the creditor thus presented his claim for

judgment, without reserving his rights under the attachment, he had elected to abandon the proceedings in attachment, and come in to share with the other creditors, *pari passu*, under the deed.

Suppose the circuit court had had its attention called to the attachment proceedings, how could it have determined what *pro rata* share of the dividend should be applied to the debt of the attaching creditor, predicated upon the existence of the prior attachment, not then determined? The validity of the attachment lien is entirely dependent upon the fact, subsequently to be ascertained by trial, of the ability of the creditor to sustain his attachment. If the attachment should subsequently be dissolved, he would have no lien. On the other hand, if the attachment should be sustained, when the court came to render judgment for the debt, it could not consider the fact of the allowance before the assignee, for nothing would be paid thereon, nor, indeed, could be paid by the assignee, as the very property out of which the assignee could alone make such payment would be in the hands of the sheriff, *in custodia legis*, subject to the payment of the attachment debt before the assignee could touch it.

Whereas, under an assignment of property, subject to a mortgage or prior equitable lien, the property passes into the hands of the assignee *cum onere*, and he has something to sell—the equitable interest, coupled with the possession. In such case, the court can direct the matter of equitable dividend. Again, if the appellant's position be the law, there is nothing to prevent this plaintiff, after recognizing the validity of the deed of assignment, by having his claims allowed under it, from going back to his attachment suit, and sustaining it on the sole ground that the deed of assignment was and is fraudulent as to him.

This is one of the grounds of attachment—that defendant was about to fraudulently *assign* his property. For aught this court knows, and the presumption,

rather, is, the affidavit was predicated of the fact that this act of assignment was then in contemplation and process of execution. What, then, would there be to prevent the plaintiff, on a trial of the issues arising on the plea in abatement, from proving the truth of the affidavit? By the repeated decisions of our courts, the only issue on such trial would be the truth of the facts alleged in the affidavit. The merits are in nowise involved. *Hicks v. Martin,* 25 Mo. App. 359; *Temple v. Cochran,* 13 Mo. 116; *Chenault v. Chapron,* 5 Mo. 438; *Cannon v. McManus,* 17 Mo. 345.

No fact or event, intervening after the filing of the affidavit, not tending to prove the fraud alleged, would be admissible under the plea in abatement. The issue is solely statutory.

It thus becomes manifest to my mind that the law contemplates no such absurd results and contingencies in its administration. It will not permit a party to occupy such inconsistent positions in the prosecution of his rights. He ought not, with the judicial sanction, to be allowed to play with the other creditors the unequal game of "heads I win, tails you lose." He must either affirm the validity of the deed *in toto*, or stand out on his asserted prior, exclusive right. His attachment, in the very nature of the case, is antagonistic to the assignment. If it stands, there is nothing for the assignment to operate upon.

It is wholly unlike the instance of a prior mortgage or equitable lien. There the prior right is founded on contract—the assent of the debtor to create the lien. When the debtor, in such case, assigns all his property, the assignee takes that portion affected with the prior lien. The possession goes to the assignee. The creditor, in such case, is secured only by a lien on part of the assets. He may well be admitted to prove up his claim, so that he may be let in to share, upon equitable principles, in a *pro rata* dividend for any unpaid balance after exhausting his security—the court having the

power to adjust the equities under the order of distribution. Not so in the case of an attachment. The proceeding, as to the debtor, is *in invitum*. Under the writ of attachment, it is the duty of the officer to seize property sufficient to satisfy the debt; and he is liable to the creditor if he stops short of this. Drake Att., sect. 190. The plaintiff is supposed to point out to the officer the property, and direct him to so levy.

In the case at bar, the sheriff seized about all the property the defendant had, and, of course, about all that would have passed to the assignee under the deed. In contemplation of law, he had enough to satisfy his debt. It is from this idea the well-settled rule of law has sprung, that, where the execution is levied on sufficient personal property to satisfy the judgment, and the property is afterward voluntarily released by the creditor, it amounts to a satisfaction of the judgment debt. The property attached in this case was thereafter *in custodia legis*. The assignee never obtained possession of it. He could not have delivered under any sale he might have made. No title would pass by a sale of the mere equity of redemption. *Yeldell v. Stemmons*, 15 Mo. 443; *Boyce v. Smith*, 16 Mo. 317.

Therefore, when the plaintiff presented this claim to the assignee for allowance, and had its judgment, there is no logical escape, in my opinion, from the legal conclusion that he thereby recognized, in the first place, the validity of the deed of assignment; second, that the very property which he now claims to hold under a prior seizure, and took into the custody of the law, passed under the deed; otherwise his judgment, for which he has so zealously contended before the assignee, would be futile and fruitless; and third, that he must be held to have intended to come in on an equality with the other general creditors, and to have the assignee to sell the property seized under the attachment. As this could only ensue by his abandonment of the attachment, it must logically and inevitably follow that he

made his election to take under the deed. From this conclusion I am unable to discover any rational mode of escape.

It is claimed that the case of *Valentine v. Decker* (43 Mo. 583), is not in point, because there the attack was made on the deed of assignment after the assailant had recognized its validity. But what difference, in principle, can it make, where the creditor comes in under the deed, thereby recognizing its validity, and then falling back on his attachment, the enforcement of which practically nullifies the assignment, and is a direct assault upon the effect of the deed of assignment?

The principle contended for by me is directly asserted by the Supreme Court of Massachusetts in *Jones v. Tilton* (1 N. E. Rep. No. 9, p. 741). There the creditor brought attachment to reach funds under the trustee process. After the service of the writ he gave his verbal assent to the deed of assignment. The court say: "Such assent, if given before the commencement of the action, would debar the plaintiffs from making the attachment, and, *being given afterwards must defeat the attachment.* * * * The assignment being valid, and the plaintiffs having assented to it, the trustee was properly discharged." This language covers the case; and was not loosely employed by a court of such high character.

In *Harrison v. Mock* (10 Ala. 185), the debtor made an assignment for the benefit of all of his creditors. The trustee at the time of the assignment had a judgment against the assignor. He accepted under the deed of assignment, and then undertook to sell the property under execution on his judgment, the execution being out in the hands of the officer at the date of the assignment. It was held that having accepted the trust, he was bound to take ratably with the other general creditors, "that by accepting the trust he waived his special lien on the property." This is precisely

what, in effect, the plaintiff is attempting to do in this case.

In *Hone v. Henrique* (13 Wend. 240), it was held that an auctioneer, who ordinarily had a lien on the money arising from sales made by him for his compensation, and although his fees arose prior to the filing of the creditor's bill to set aside the sale, was not entitled to his priority, because by selling under the assignment he had signified his acceptance of its provisions, and must come in with the others.

In *Adlum v. Yard* (1 Rawle, 171), the court say : "The plaintiff having accepted a dividend on the only terms on which it was offered, is as effectually concluded from claiming a repugnant right, as if he had asserted the validity of the deed of trust in a court of record." And this is approved by our Supreme Court in *Gutzwiller v. Lackman* (23 Mo. 174). The doctrine of election now applies to this case. *Frierson v. Branch*, 30 Ark. 443. Bispham in Principles of Equity, section 295, says : "An election in equity is a choice which a party is compelled to make between the acceptance of a benefit under an instrument, and the retention of some property already his own, which is attempted to be disposed of in favor of a third party by virtue of the same instrument." "The doctrine rests upon the principle that a person claiming under an instrument shall not interfere by title paramount to prevent another part of the instrument from having effect according to its construction; he could not accept and reject the same instrument." *Frierson v. Branch, supra.* And Perry on Trusts (vol. 2, sect. 597), asserts the doctrine, that a party, by accepting under a deed of trust, "waives all claims and liens upon the property inconsistent with the deed." And in the most recent case of *Stoller v. Coates* (88 Mo. 515), the doctrine is recognized and affirmed, that a creditor, by having an allowance in his favor before the assignee against the general assets, is estopped from asserting a prior equity for the conversion of the fund,

as against him. The case of *Grant v. Chapman* (38 N. Y.) is not in point. The attaching creditor did not prove up under the assignment and then fall back on the attachment. The assignment specifically provided for a preference in favor of the attaching creditor for the amount proved; and the assignment, in providing that the assignee should then recognize it, did no more than the law would have compelled him to do.

In *Gummersell v. Hanbloom* (19 Mo. App. 274), the doctrine here contended for is expressly recognized. Sampson claimed under a chattel mortgage, which, if enforced, practically nullified the deed of assignment; and as it was taken in anticipation of the deed of assignment, Hall, J., said: "It is certain that Sampson cannot claim under both the mortgage and the assignment. The rights given by the mortgage and the assignment are inconsistent. It is equally clear, from the statement made by Sampson, in presenting the notes to the assignee for allowance, that he intended to and did claim those inconsistent rights." In presenting his claim to the assignee he expressly reserved his rights under the mortgage; and his claim was disallowed. Under the facts of that case the language of the court was proper enough, as the exclusive claim asserted by the mortgagee to the goods made it inconsistent with his attempt to come in under the deed of assignment, confessedly intended to defeat that mortgage.

This, too, becomes the stronger, as against the position assumed herein by the minority, as the assignee there had something to sell to satisfy any allowance made by him, as he had the possession of the goods, and could have delivered the same to the purchaser, subject to the equity of redemption from the mortgage. Whereas here the assignee had nothing, if not the attached property. Therefore, by unreservedly submitting his claim under the assignment, he elected to have this property administered under the deed of assignment; and he cannot thereafter proceed as if he had not done so. In

the recent case of *Eppright v. Kauffman* (90 Mo. 25), the principle I contend for is recognized. After presenting and having allowed his claim before the assignee, the plaintiff obtained judgment, *nem. con.*, on his claim in the circuit court against the assignor. He then attempted to subject to its payment certain bank stock, which he supposed had not passed under the deed of assignment. It was held that the allowance by the assignee had all the force and effect of a judgment by a court of record, and became *in rem judicatum;* and, therefore, could not be affected by the mere act of taking judgment afterwards on the claim in the circuit court, and attempting to make it out of property which he innocently supposed had not passed under the deed of assignment. But, in respect of the other aspect of the case, as to his right, after recognizing the validity of the assignment, and then proceeding as if he had not done so, Sherwood, J., who delivered the opinion of the court, observed: "That where a party has accepted an assignment he cannot then proceed as if he had not done so, and in such case the assignee has a remedy by injunction to restrain him from further action."

This is precisely, in effect, what the plaintiff is attempting in this case. He accepted the assignment, and by then falling back on his attachment, which was to thwart the operation of the deed of assignment, he is attempting to "proceed as if he had not done so." And if injunction would lie to restrain him, the assignee had the unquestionable right to interpose, by interplea, and set up the facts to accomplish the same end.

The demurrer was, in my opinion, properly overruled by the circuit court, and its judgment should be affirmed. It is so ordered. Hall, J., concurs; Ellison, J., dissents.

Ellison, J., Dissenting.—I dissent from the foregoing opinion, for the following reasons: The F. A. Drew Glass Company attached a certain stock of goods,

belonging to E. T. Baldwin, on the seventh day of January, 1885, the sheriff of Pettis county, on that day, seized the goods, made a list thereof, and held the exclusive possession thereof. Among the causes alleged for the attachment was one, that defendant was about, fraudulently, to convey, or assign, his effects; but, as the case went off on a demurrer, we have no right to assume the assignment afterwards made by the defendant was in the mind of plaintiff when he made the affidavit. We have not the right to suppose, in the most remote degree, that this assignment, which was for the benefit of all creditors, was in plaintiff's mind. For aught we know, plaintiff had reference to some other disposition of the property, which he supposed was contemplated, when he sued out the attachment.

On the next day, viz: January 8, 1885, said E. T. Baldwin made an assignment to the interpleader, G. C. Heard, by which he conveyed to him, for the benefit of his creditors, the goods which had been attached, and other property and assets.

On the thirteenth day of February, 1885, the Drew Glass Company filed, with said assignee, the same account upon which they had brought suit and attached the stock of goods, and, on the day set for the hearing of claims, by said assignee, offered evidence in support thereof; the assignee refused to allow said claim, when the Drew Glass Company appealed from his decision to the circuit court of Pettis county, by which court the appeal was sustained, and said claim allowed.

Afterwards, the assignee filed his interplea, in which he claimed the property, under the assignment. The interplea set out the facts as to the attachment, showing it to have been levied anterior to the assignment, as also the proof of the claim before interpleader, as assignee. There was a demurrer to this interplea, setting up the following causes: First, said interplea shows upon its face that said interpleader, G. C. Heard, has no title or right of possession of the goods attached

in said cause of the F. A. Drew Glass Company against said E. T. Baldwin. Second, that said interpleader had no title or right to possession of said property, at the time the same was attached, nor has he since acquired any such right or title, nor has he any such right or title as entitles him to recover upon such interplea. Third. Said interplea sets out in detail the facts which said interpleader alleges establish his title and right of possession of the attached goods, while such facts fail to establish any right of possession, or any title to the same, which he can hold or assert as against plaintiff's claim, as attaching creditor, under the writ of attachment under which said goods were attached.

This demurrer was overruled, defendant refused to plead further, and appealed to this court. The record here presents these questions, viz : (1) Does a prior attaching creditor estop himself from proceeding with his attachment, or waive his lien upon the attached property, by presenting his claim to the assignee for allowance, and procuring the allowance of the same ? (2) Is a prior attaching creditor compelled to elect either to rely solely upon his ability to sustain his attachment, and make out of the attached property sufficient to cover his claim and costs, or by presenting his claim for allowance to the assignee, give up the lien of his attachment ? In other words, must he elect either to stand on his attachment, and if he is beaten on a plea in abatement to his attachment, lose all, or, by having his claim allowed by the assignee, against the assigned estate, waive his attachment, and surrender all lien upon the attached property ?

There is no question raised as to what dividends such attaching creditor might be entitled to on his allowance, or how or when payable, or as to which fund should be first exhausted before going upon the other. There are two general rules in reference to assignments that are not disputed, or are, at least, well established ; one is that the assignee, succeeding only to the rights of the assignor, is affected by all equities against him, and

takes his property "subject to all existing liens, charges, and set-offs." Burrill on Assignments, sect. 391. The other is that a party shall not contest the validity of an instrument from which he draws a benefit, or affirm it in part and disaffirm it in part. *Irwin v. Tabb*, 17 Serg. & Rawl. 442; *Valentine v. Decker*, 43 Mo. 583.

In this case, the attachment writ had been issued, and the property seized thereunder, a day prior to the assignment. This created a lien on the property, which, generally speaking, nothing subsequent can destroy but the dissolution of the attachment. Drake on Attachments, 224. The lien of the attachment existed prior to the assignment, and the assignee took the property subject to that attachment. Burrill on Assignments, sect. 391; *Frost v. Wilson*, 70 Mo. 664.

I. The important question, then, is, does the prosecution of the attachment to judgment operate as a contest of the validity of the assignment? I think not. The attachment was levied before the assignment was made, and, as before stated, the assignment was subject to the lien of the attachment. Each exists in recognition of the other, and not in hostility. The assignment is made in recognition of the attachment, and subject to its lien, and the attachment remains in recognition of the right of the assignor to assign his property, subject to the attachment. I can conceive of no hostility in these positions.

The authorities recognize the right of secured creditors as subsisting under both the security and the assignment. Burrill on Assignments, sects. 116, 440. There is a diversity of opinion as to how, and upon what basis, the dividends shall be declared in such cases, but I do not understand the right to be in any manner questioned by the text-writers on this subject.

The case can be looked at from another view, and the result is the same. There is a principle of law that one shall not occupy inconsistent positions in reference to the same matter; that he shall not play double. Thus,

he shall not be permitted to attack an assignment and at the same time seek a benefit thereunder. "Approaching the fortress with a hostile intent, he should expect to find the gates barred." *Jeffries' Appeal*, 33 Pa. St. 39. Such was the case of *Valentine v. Decker* (43 Mo. 583). In that case an attachment was levied on the goods assigned, after the assignment. The attachment was sued out on account of alleged fraud in the assignment. The attachment was a direct attack upon the validity of the assignment. It was there said that "the real point presented is, whether Valentine & Company, by their attachment suit, taking the property out of the hands of the assignee and selling the same, are precluded from claiming any benefit in the assignment." An examination of the long list of authorities cited by plaintiff will show them to be cases where the party claiming under the assignment was, at the same time, attacking it for fraud. Such was the principal case of *Frierson v. Branch* (30 Ark. 453). There the question was, as stated by the court, "Could the appellants claim under a deed, and at the same time attack and defeat a provision made by it for the benefit of other creditors? In other words, could they be permitted to claim under the deed, and yet allege a fraud in its execution which would avoid it on a bill brought by them * * * for the purpose of setting it aside?" As before observed, the case at bar is not like these; the attaching creditor is not attacking this assignment; he is merely enforcing his own rights and recognizing the rights of others. "It is no objection to a provision for creditors by an assignment that they have already been secured by judgment or mortgage. But such provision will be considered as made, subject to the equity as between the creditors, to have the mortgage debt paid out of the mortgaged property." Burrill on Assignments, sect. 116; *Perry Ins. & Trust Co. v. Foster*, 58 Ala. 502, 520, 521; *Strong v. Skinner*, 4 Barb. 546.

In the case of *Grant v. Chapman* (38 N. Y. 293),

the following provision was made in the assignment giving preference to the claim therein mentioned, viz. : "The amount that may be found due the sheriff of Madison county, by virtue of an attachment in the Supreme Court * * * provided the attachment proceedings are sustained, and are a lien upon the goods in the store." The court said this was a provision in mere affirmance of the legal obligations of the assignee, authorizing him in terms to do precisely what the law, if the assignment was silent on the subject, would require him to do, and could not affect the validity of the instrument.

II. As to the question of election, I have this to say : An election implies a choice between conflicting interests, rights or claims in the elector, and if what has been said is correct, there is no case for election here, from the fact that there is no choice between conflicting rights. But if I am in error as to this, as well as the other portions of this opinion, I am still of the belief that the demurrer should have been sustained, for the reason that if it be a case of election, the time had not yet arrived at which defendant should be compelled to exercise that right. The doctrine of election, though sometimes applied at law, is of an equitable nature, principally exhibited in cases of wills, and rests, more or less, upon equitable principles, and it appears to me to be unjust and inequitable to compel a prior attaching creditor to elect between his attachment and the assignment, before the attachment has been passed upon. If a plea in abatement should be sustained, the attachment would be of no avail, and while this is undetermined there can be no fair election, from the fact that there is not sufficient information as to what . his rights may be. "Persons compelled to elect are entitled previously to ascertain the relative value of their own property, and that conferred upon them. * * * In *Boynton v. Boynton* (1 Bro. C. C. 445), although Lady Boynton had, by her answer, elected to take her dower, instead of the benefit given to her by her husband's will, Sir Thomas

Sewell, M. R., declared on the hearing, that as no account of the testator's personal estate and of his debts had been taken, she was not obliged to make any election until the account should be taken, and it should appear out of what real estate she was dowerable at the time of the testator's decease, and it was referred to the Master to take account of the personal estate, and also state out of what estate she was dowerable. A person compelled to elect may file a bill to have all necessary accounts taken, * * * and an election made under a mistaken impression will not be binding, for in all cases of election, the court, while it enforces the rule of equity, that the party shall not avail himself of both his claims, is anxious to secure to him the option of either, and not to hold him concluded by equivocal acts, performed, perhaps, in ignorance of the value of the funds." 1 Lead. Cas. in Eq. 300. And so, in an attachment suit in Massachusetts, a plaintiff was held not cut off from the assignment, by prosecuting the action to judgment. "If they had prevailed in their action, and then elected to rely on the attachment rather than on the provision made for them in the deed of trust, this, undoubtedly, would have amounted to a waiver and disaffirmance of the trust." *New Eng. Bank v. Lewis*, 8 Pick. 113.