CARRIE BACON TURNER, Appellant, v. DREES HARDWARE & FURNITURE COMPANY, a Corporation, Defendant; R. I. COPE, Interpleader, Respondent.

Springfield Court of Appeals, February 14, 1921.

1. **ASSIGNMENTS FOR BENEFIT OF CREDITORS:** Fraudulent Conveyances: Assignment for Benefit of Creditors not ''Sale, Trade, or Other Disposition'' within Bulk Sales Law. Assignment of stock of goods to trustees for creditors by a retail hardware and furniture company, *held* not such a "sale trade or other disposition" of stock of merchandise as is embraced within the Bulk Sales Law.

2. ————: **Deed Reserving Right in Assignor to Dispose of Property Void as to Nonassenting Creditors.** Purported deed of assignment to trustee for creditors, executed by a retail hardware and furniture company, whereby the assignor reserved for six days right to dispose of the property attempted to be conveyed, etc., *held* void as to all creditors who did not consent to and accept its terms, being such an assignment as is defined in Revised Statutes 1919, section 2276.

Appeal from Butler County Circuit Court.—*Hon. Almon Ing*, Judge.

REVERSED.

*Sam M. Phillips* for appellant.

(1)   The deed of trust from Drees Hardware & Furniture Company to interpleader R. I. Cope, was fraudulent and void because said Company did not comply with the terms of the "Bulk Sales Law" in making said deed.   See Laws of Missouri, 1913, page 163, 164, 165.   (2)   The Bulk Sales Law applies to deeds in the nature of an assignment for the benefit of creditors.   The statute provides that its terms shall apply to: "The sale, trade or other disposition of the major part in value, or the whole of a stock of merchandise, etc."   The words "or other disposition" following the words "sale and trade" will include a deed in the nature of an assignment.   The term "disposition" as used in the statute, of course, means to "dispose of."   The term "dispose of" includes the assigning of property to a use.   Pearce v. Hawkins, 62 Texas 434, 437; 18 Corpus Juris, 1280; Webster's Int. Dictionary; Koerner v. Wilkerson, 96 Mo. App. 517; Swensen v. Klenschmidt, 10 Mont. 473, 482, 26 Pac. 198.   (3)   The words "sold and disposed of" mean more than sold.   It includes also mortgage.   Platt v. Railway, 99 U. S. 48, 67, 25 L. Ed. 424; Rutherford, etc. v. Samtrock, 60 N. J. Eq. 471, 473; Gordon y. Preston, 1 Watts (Pa.) 385, 386; Lancaster v. Doley, 1 Rawle, (Pa.) 251.   The word "dispose of" means pass over into the control of another.   Koerner v. Wilkerson, 96 Mo. App. 517.   It means to alienate.   18 Corpus Juris, 1280; Abbott L. D. (Quot.) Pearre v. Hawkins, 62 Tex. 434, 437; Webster Int. D. (Quot.) Illinois L. Ins. Co. v. Beifield, 184 Ill. App. 582, 594; Ironside v. Ironside, 150 Iowa, 628, 632, 130 N. W. 414; Koerner v. Wilkinson, 96 Mo. App. 510, 517, 70 S. W. 509; Neilson v. Alberty, 36 Okl. 490, 496, 129 Pac. 847; Waddell's App., 84 Pa. 90, 96; Pearre v. Hawkins, 62 Tex. 434, 437; U. S. v. Hacker, 73 Fed. 292, 294; Scott v. State, 6 Ga. App. 332, 334, 64 S. E. 1005.   (4)   It means to alienate the direct ownership of property.   18 Corpus Juris, 1280, note 79;

Black L. D. (Quot. Ironside v. Ironside, 150 Iowa, 628, 632, 130 N. W. 414; Smith v. Becker, 62 Kan. 541, 547, 64 Pa. 70, 53 L. R. A. 141. (5) It means to convey. 18 Corpus Juris, 1280, note 81; Rogers v. Goodwin, 2 Mass. 475, 477; Hunt v. Hunt, 11 Nev. 442, 449. (6) To put into the hands and control of another. 18 Corpus Juris, 1280, note 90 and 91; Peo v. Rathbun, 21 Wend. (N. Y.) 509, 527; Newcomb v. Newcomb, 12 N. Y. 603, 620. (7) As further showing the "Bulk Sales Law" applies to assignments, in section 3 of the Act (Laws 1913, 164) in defining terms, it is provided: "The word vendor in this Act shall include sellers, transferrers and assignors, and the word vendee shall include purchasers, transferers and assignees . . ." "An assignor is one who makes an assignment or transfers property to another. 5 Corpus Juris, 837. An assignee is one to whom an assignment is made. 5 Corpus Juris, 838 et seq. The Drees Hardware & Furniture Company by the deed offered in evidence, made or attempted to make an assignment. Therefore, by virtue of said instrument it became an "assignor," and this being true, the "Bulk Sales Act" by virtue of its terms covers the transfer. The interpleader R. I. Cope, being the one to whom the assignment was made, was and is the "assignee" and his rights and duties are fixed and determined by the "Bulk Sales" Law. The Bulk Sales Law applies to a chattel mortgage, why not to a deed of trust? See Semes et al. v. Ruedinger, et al., 194 Mo. App. 621, 187 S. W. 604. In the case just cited it is held that, "A chattel mortgage to a brewing company of all a saloon keeper's stock of merchandise, fixtures, etc., for a stated money consideration claimed to be then due the brewing company, and purporting to secure a note, was fraudulent and void as to creditors of the mortgagor, where the brewing company did not receive, prior to the transfer, a verified written statement containing the names and addresses of all creditors, and did not notify the creditors before taking possession of the stock or paying the

consideration, as required by the Bulk Sales Law (Laws 1913, pp. 163-165)'' (8) ''Express mention is implied exclusion.'' In the latter part of section 3 express mention is made of the kind of sales and transfers to which the ''Bulk Sales Law'' does not apply. Under the above maxim therefore the ''Bulk Sales Law'' does apply to all sales and transfers ''not expressly mentioned'' in the exception. An assignment, or an assignment for the benefit of creditors or deed of trust for benefit of all the creditors, are not expressly mentioned in the exception to the operation of the statute, and they are therefore impliedly excluded from the operation of the exception. Let us now see what is excluded from the operation of the statute. The pertinent part of the exception to the section of the statute under consideration reads: ''Nothing contained in this act shall apply to Sales by executors, . . . assignees for the benefit of creditors . . . or to sales under deeds of trust for the benefit equally of all the creditors; . . .'' In the first place it will be noted that the exception expressly mentions and therefore only applies to ''sales.'' ''Assignments'' or ''other disposition'' are not mentioned; therefore, the only kind of a transfer of property exempted from the operation of the statute is a ''sale'' of some kind. From this we see that assignments and deeds of trust for the benefit of creditors are not exempted. The exemption, however, does cover sales by assignees for the benefit of creditors, but it does not exempt sales or transfers to assignees for the benefit of creditors. If it was intended by the Legislature to exempt transfers to assignees for the benefit of creditors, the statute would have doubtless read: ''Nothing in this act shall apply to sales, transfers, or assignment to or by executors . . . assignees for the benefit of creditors . . . or to deeds of trust for the benefit equally of all the creditors, or to sales thereunder.'' But the statute does not so read. Courts do not make or add to statutes, but merely construe them

as enacted by the Legislature. 36 Cyc., 1102, 1103; Clark v. Railway, 219 Mo. 524, 118 S. W. 40; State v. Heman, 70 Mo. 441; Sutherland on Statutory Const., secs. 235, 236, page 311. The sale under a deed of trust given for the benefit of creditors is specifically mentioned in the exemption, but the giving of such a deed is not mentioned in the exemption and therefore the statute applies to it.

*J. C. Sheppard* and *L. E. Tedrick* for respondent.

(1). It is the sole contention of appellant that the deed of trust conveying to interpleader the stock of merchandise, is void, for the reason that the Drees Hardware and Furniture Company, failed to comply with the terms of what is known as the "Bulk Sales Law." It is the contention of the respondent that the "Bulk Sales Law," does not apply to a transaction of the kind involved here Session Acts of 1913, page 164, section 3, as follows: "Sec. 3. Definitions—application of act.— The word vendor in this act shall include sellers, transferers and assignors, and the word vendee shall include purchasers, transferrees and assignees and said words vendor and vendee shall include corporations, associations, co-partnerships and individuals. Nothing contained in this act shall apply to sales by executors, administrators, guardians, receivers, assignees for the benefit of creditors, trustees in bankruptcy, or by any public officer, under judicial process or to sales under deeds of trust for the benefit equally of all creditors: Provided, that the provisions of this act shall not apply to any sale, transfer or assignment of any goods, wares or merchandise now exempt by law from execution." The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. This intention, however, must be the intentions, as expressed in the statute, and where the meaning of the language used is plain, it must be given

effect by the courts, or they would be assuming legis-
lative authority. But where the language of the statute
is of doubtful meaning, or where an adherence to the
strict letter would lend to injustice, to absurdity, or to
contradictory provisions the duty devolves upon the
court to ascertain the true meaning. 36 Cyc., 1106, sec.
2; Lumber Company v. Railroad, 216 Mo. 658; Perry v.
Strawbridge, 209 Mo. 621. (2) Personal property in
possession of a trustee under a valid deed of trust to
secure certain creditors, is not subject to attachment by
other of the grantor's creditors. Woodson v. Carson,
135 Mo. 521; Jaffrey v. Matthews, 120 Mo. 317; Huiser
v. Beck, 55 Mo. App. 668. (3) Whatever frailty there
may have been, if any, in the deed of trust, was cured
by the trustee taking actual possession of the property
before the levy of the attachment writ. Hardy v.
Graham, 63 Mo. App. 40; Dobbins v. Meyers, 95 Mo. 132.
There being no evidence of fraud in this case the per-
emptory instructions to the jury was proper. Hardy v.
Graham, ib.

BRADLEY, J.—The defendant, Drees Hardware
& Furniture Company, conducted a retail store in
Poplar Bluff, and was in failing circumstances. It
owed plaintiff $350 for rent on the building it occupied.
On February 7, 1920, defendant company attempted to
convey by written instrument called a deed of trust all
of its stock of merchandise of the value of about $5000,
and its notes and accounts, to Robert I. Cope in trust for
the benefit of creditors. Immediately after this convey-
ance the trustee took possession and proceeded to take
an invoice. On February 10, 1920, plaintiff commenced
proceedings in the circuit court by attachment to recover
her rent. Under the writ of attachment the sheriff
seized the stock of merchandise, notes and accounts con-
veyed to the trustee. The trustee interpleaded, and the
issues made on the interplea were tried before the court
and a jury. At the close of the whole case the court
directed a verdict for the interpleader, and plaintiff un-

successful in her motion for a new trial brings the cause to this court by her appeal.

The interplea alleges that the stock of merchandise, notes and accounts were not at the time of the levy under the attachment writ the property of the defendant, but that said property was then the property of the interpleader and in his possession as trustee for the creditors of the defendant, and that at the time of the levy defendant had no right, title or interest in said property. Plaintiff answered the interplea by general denial, and that the conveyance to the interpleading trustee is fraudulent and void for the reason that said conveyance attempts to dispose of the whole stock of merchandise in a manner contrary to the provisions of the bulk sales law. The interpleader replied by general denial.

The instrument by which defendant hardware company conveyed to interpleader is as follows: (Paragraph numbers are ours): ''Deed of Trust for Benefit of Creditors. (1) This deed made and entered into this 7th day of February, 1920, by and between The Drees Hardware & Furniture Company, a corporation, of Poplar Bluff, county of Butler and State of Missouri, party of the first part, and Robert I. Cope (hereinafter referred to as trustee), party of the second part, and the persons, firms and corporations (hereinafter referred to as creditors), named in schedule A hereto attached and made a part hereof, and all other creditors of the party of the first part, whether named herein or not, who shall claim the benefit of this agreement within four months from the date hereof, (here follows names of creditors) parties of the third part.

(2) Witnesseth: That the party of the first part for and in consideration of the indebtedness due said creditors as set forth in said schedule A opposite their respective names, the trust hereinafter mentioned and created, and of the sum of one dollar to him paid by the said party of the second part, the receipt whereof is hereby acknowledged, does by these presents sell, assign,

transfer and mortgage to the said party of the second part, successors and assigns, the following described property situated in the county of Butler, State of Missouri, to-wit:

(3)   All the goods, wares and merchandise now located and being in the store building at 223 South Broadway in the city of Poplar Bluff and State of Missouri, and all other goods, wares and merchandise belonging to the Drees Hardware Company that may be stored elsewhere in the city of Poplar Bluff,.and State of Missouri, together with all accounts and notes due the said Drees Hardware Company, and possession of said property is now delivered unto said party of the second part.

(4)   To have and to hold the. same to said party of the second part and to his successors and assigns forever.

(5)   In trust, however, upon the conditions and for the purposes following, to-wit:

(6)   Whereas, the said party of the first part is indebted to said creditors in the amounts set opposite their respective names in said schedule A hereto attached.

(7)   Now, therefore, if said party of the first part shall pay or cause to be paid to the said creditors all of the indebtedness due as aforesaid to them, and to each of them with the accrued interest thereon before the 14th day of February, 1920, then this instrument shall be void; otherwise it shall remain in full force and effect.

(8)   In the meantime, the said trustee shall take and is hereby given immediate and exclusive possession of the property hereinbefore conveyed, and shall make or cause to be made a correct inventory of the same; and if default be made in payment of said indebtedness in the time aforesaid, the trustee shall sell the merchandise, fixtures and other property at public or private sale, with or without notice, in bulk or at retail, as to him may seem best for all concerned; Provided, however, that upon demand in writing of a majority in number of said creditors representing a majority in amount of said indebtedness, it shall be the duty of said trustee to

sell all or any portion of the property hereinbefore conveyed at public auction to the highest bidder for cash, after having mailed to all creditors named in said schedule A, to their respective addresses as therein stated, written notices of the time and place of said sale at least ten days prior thereto, and advertising in such manner as said trustee may elect; and the affidavit of said trustee of the mailing of said notices to said creditors shall be conclusive evidence thereof.

(9) And said trustee shall proceed to collect the notes and accounts, or to sell or dispose of the same in such manner as to him shall seem best for the interests of all concerned, and in case said trustee shall find that any of said notes and accounts are disputed or are against persons of doubtful solvency, he is hereby authorized to settle, compromise or extend the same on such terms as he may deed best.

(10) Out of the proceeds of such sales and collections the said trustee shall pay; first, the expense of administering this trust, including taxes, if any, insurance, rents, fuel lights, advertising, clerk hire, attorney fees, and a reasonable compensation to said trustee, and to said creditors the amounts so due them and each of them as aforesaid; but in case such proceeds shall not be sufficient to pay said indebtedness in full then he shall pay said creditors pro rata in the proportion that the amount due to each of them bears to the whole of said indebtedness.

(11) After said indebtedness to said creditors and each of them is paid in full, then said trustee shall return to said party of the first part any and all surplus money or property remaining in his hands.

(12) Said schedule A is intended to be a full and correct list of all the unsecured creditors of said party of the first part, with correct address and the amount due to each; but if through error or oversight the name of any unsecured creditor of said party of the first part has been omitted from said schedule A, said trustee up-

on ascertaining the facts may, and it shall be his duty to add the name of such creditor, his address and the amount due, thereto; and in case said trustee shall find any error has been made in stating the address of any creditor named in said schedule A, or that the amount specified as due to any creditor is erroneous in amount, then it shall be the duty of said trustee, upon ascertaining the facts, to so correct such schedule A as to make it state the truth in that regard; and for the purpose of ascertaining the facts regarding the amount due any of said creditors, said trustee is authorized to require of them itemized and verified statement of their accounts, exhibition to him of original notes or contracts, and to demand from them such additional legal and proper evidence as he shall deem necessary; and said schedule A when so amended and corrected by said trustee shall stand and remain as the basis for payment to creditors hereinbefore provided for and for all other purposes of this trust. No creditor holding as security any property of the grantor shall be entitled to the benefits of this agreement unless such creditor shall first surrender such property to the trustee herein to be administered in accordance with the terms of this conveyance. Any creditor who shall fail or refuse to be bound by the terms of this agreement or who shall refuse to accept any distribution made by the trustee pursuant to the terms hereof shall be forever barred from the benefits of this agreement and the trustee shall upon the completion of his duties as trustee, pay over to the party of the first part any amount which might otherwise be payable to such party if such party still fails and refuses to accept the same. Any creditor not named herein shall be forever barred from the benefits of this agreement unless such creditor shall claim the benefit of this agreement within four months from the date hereof.''

Schedule A contained the names and address and the amount due each of the creditors named. Plaintiff and other creditors were not named in the instrument.

Defendant hardware company was on a deal to sell its stock of merchandise to local parties, and its president testified that if he made the sale he intended to pay plaintiff in full. He further testified the purpose of conveying to the interpleader was to keep certain creditors quiet until the sale to the local parties could be made. The record shows that these prospective purchasers went along with the interpleader and verified the invoice in order to avoid taking two inventories. The interpleader testified that these prospective purchasers were to buy from the defendant hardware company as under the assignment said company had a certain number of days to sell the stock and pay off the debts.

There are two questions here. Does the assignment constitute such a "sale, trade or other disposition" of the stock of merchandise as these terms are used and understood in our Bulk Sales Law? [Laws 1915, p. 163; Secs. 2286 et seq., R. S. 1919.] Is the assignment valid as a common law assignment for the benefit of creditors?

Sections 1 and 3 of the bulk sales law, now sections 2286 and 2288, the sections involved here, are as follows: Section 2286. "The sale, trade or other disposition of the major part in value or the whole of a stock of merchandise, fixtures and equipment, or equipment pertaining to the vendor's business, otherwise than in the ordinary course of trade and in the regular prosecution of the vendor's business, whether in one or more parcels or to one or more persons, provided the transfer is all or part of substantially one transaction or proceeding or occurs substantially at one time, shall be fraudulent and void as against all creditors of the vendor, unless the vendee, at least seven days before the sale, trade or other disposition demands and receives from the vendor thereof, and if the vendor be a corporation, then from the managing officer or agent thereof, a written statement, which it shall be the duty of the vendor to furnish, of the names and addresses of all creditors of such ven-

dor, together with the amount of indebtedness due or
owing by the said vendor to each of said creditors, and
certified by the vendor, under oath, to be a full, accurate
and complete list of his creditors and the amounts owing
to each to the best of his knowledge and belief, and unless
the vendee shall, at least seven days before taking pos-
session of said merchandise, or merchandise, fixtures and
equipment, or equipment, or before paying or delivering
the purchase price or consideration therefor or any part
thereof to the vendor (but all or any part thereof may
be put in escrow with some financially responsible party
during said time if the parties so desire) in good faith
notify or cause to be notified, by telegraph, or by reg-
istered letter deposited in the mail properly stamped,
directed and addressed, each of the creditors of the
vendor named in said list, of the proposed sale, trade
or other disposition, a general statement of the char-
acter of the merchandise, or merchandise, fixtures and
equipment, or equipment to be disposed of, the terms
and conditions of the purchase, the parties thereto and
the date when and the place where the sale, trade or
other disposition is to be finally completed; Provided,
however, that if such vendor produces and delivers to
the vendee a written waiver of the provisions of this ar-
ticle from his creditors, as shown by said verified state-
ment, then the provisions of this article shall not apply.''

Section 2288. ''The word vendor in this article
shall include sellers, transferrers and assignors, and
the word vendee shall include purchasers, transferees
and assignees and said words vendor and vendee shall
include corporations, associations, co-partnerships and
individuals. Nothing contained in this article shall ap-
ply to sales by executors, administrators, guardians, re-
ceivers, assignees for the benefit of creditors, trustees
in bankruptcy, or by any public officer, under judicial
process or to sales under deeds of trust for the benefit
equally of all creditors: Provided, that the provisions
of this article shall not apply to any sale, transfer or

assignment of any goods, wares or merchandise now exempt by law from execution.''

We do not find that the question here has been passed upon in this State, but like or similar questions under similar statutes of other states have been determined. In Blanke Tea & Coffee Co. v. Sargent et al., 141 Pac. (Colo.) 468, Sargent & Sons, merchants, conveyed their stock of merchandise to a trustee for the benefit of all creditors. Under the deed of assignment the trustee sold the stock of goods to the Union Trading Co. The tea and coffee company, a creditor of Sargent & Son, brought suit by attachment against Sargent & Son and levied upon the goods as the property of their debtor. The Union Trading Co. intervened or interpleaded. It was held that the transaction was not such a sale as contemplated by the Bulk Sales Statute of that State. The court, however, makes this observation in the opinion: "But in any event that statute provides that, in case of a sale in violation of its provisions, such fact shall be simply prima-facie evidence that the sale was fraudulent, and the trial court found upon that question, and held that the burden was upon defendant.''

In McAvoy v. Jennings, 87 Pac. (Wash.) 53, the court had under consideration the Bulk Sales Law, and an instrument in some respects similar to the one in the case at bar. The instrument is set out in full in McAvoy v. Jennings, 81 Pac. 77. Hawkins & Co. by the common law deed of assignment did thereby "grant, bargain, sell and convey and deliver'' their entire stock of merchandise, fixtures, and accounts to Jennings "to have and to hold said personal property unto the said party of the second part, his heirs, executors, administrators and assigns, in trust for the uses and purposes hereinafter mentioned.'' The grantee or trustee is then directed to sell at public or private sale the property conveyed to him, and after deducting the expenses of administration "to apply the proceeds remaining equally and ratably among the creditors of the parties of the first part

enumerated in the list of creditors hereto attached."
Jennings took possession of the property conveyed in
trust and sold it, and proceeded with the collection of the
book accounts. The Amerian Savings Bank & Trust
Company was one of the creditors named in the list at-
tached to the deed of assignment. After the transfer to
Jennings, had been made the bank assigned its claim to
McAvoy who commenced an action against Harkins Com-
pany to recover judgment for said claim. In that action
McAvoy caused Jennings to be summoned as garnishee.
Jennings answered denying that he was indebted to Har-
kins Company, and denied that he had any property in
his possession or under his control belonging to Harkins
Company. He further pleaded the trust agreement, and
stated that he had a certain sum of money which he was
prepared to distribute in accordance with the trust
agreement. McAvoy contended that the transfer to the
trustee was void because made without complying with
the Bulk Sales Law. The court in finally dispising of
the cause, McAvoy v. Jennings, 87 Pac. 53, said: "The
contention that the transfer was void by reason of its
being in contravention of what is termed the 'Sales-In-
Bulk' Law (chapter 109, p. 222, Laws 1901), is untenable,
for the reason that this was not a sale within the con-
templation of that act. The object of that law was to
prevent the vendor, generally a retail merchant, from
escaping his responsibilities to his creditors by dispos-
ing of all his stock, pocketing the proceeds, and leaving
his creditors without redress. But in this case Jennings
did not purchase the stock, and, under the terms of the
agreement, was not to pay any portion of the value of
the stock, of which he took possession, to the owners.
But he simply acted as a trustee, so far as the goods
assigned to him went, for the benefit of the creditors."
[See, also, Kasper v. Spokane Merchant's Association,
151 Pac. 800 to the same effect as the Jennings case.]

In Eldredge Brewing Co. v. Cocheco Bottling Co.,
104 Atl. (N. H.) 453, the bottling company assigned all
its assets, including stock in trade, book accounts, tools

and machinery to one O'Malley for the benefit of all its creditors. After the assignee had accepted the trust and taken possession of the property, the brewing company attached said property as the property of the bottling company. The court permitted the assignee to intervene. The brewing company was a creditor of the bottling company, and contended that the assignment was void as to it because of the Bulk Sales Law. The court in passing on the question raised said: "While an assignment like the one in question may be a sale for some purposes it is not a sale in the ordinary meaning of the term. This tends to the conclusion that such transactions are not void under the provisions of section 1. The fact such a transaction tends rather to prevent than to promote the evil at which that section is aimed—that peculiar to merchants selling their stock in trade in order to defraud their creditors—also tends to the conclusion that such an assignment is not a sale within the meaning of that term as it is used in this section."

It is stated in 12 R. C. L. 530, that the object of the Bulk Sales Statute is to hold the goods of debtors under such circumstances as a trust fund for the benefit of all the creditors, and to hold the purchaser in possession as a trustee for the creditors. Our statute, section 3 as will be noted says that the word *vendor* shall include sellers, transferers, and assignors, and the word *vendee* shall include purchasers, transferees and assignees. It is further provided among other things in this section that nothing contained therein shall apply to sales *by* assignees for the benefit of creditors, or to sales *under* deeds of trust for the benefit equally of all creditors. Plaintiff here urges that if the Legislature intended to except the character of sale here in question from the provisions of the act that it should have been worded something like this: Nothing contained in this act shall apply to transfers *to* assignees for the benefit of creditors or sales by such assignees, or *to* deeds of trust for the benefit of all creditors, or sales under such deeds of

trust.'' The statute in terms does not except the statutory assignment for the benefit of creditors. It does except a sale *by* such assignee. But there could be no such assignee until some creditor had made such statutory assignment. If we construe the statute as urged by plaintiff then before a creditor could lawfully màke a statutory assignment for the benefit of creditors the formality of notice, etc., under the Bulk Sales Law would have to be observed in order to make such assignment valid. The Bulk Sales Law specifically excepts sales *by* an assignee for the benefit of creditors, and there is no contention that said law is in any manner involved when a creditor makes a statutory assignment for the benefit of creditors.

There is a diversity of opinion in the various states in the construction of the Bulk Sales Statutes. These statutes have been dapoted in nearly all the States, and are quite similar in effect. All require some kind of notice. Some are broader than ours, and some are more specific in exceptions. The following are some of the cases holding contrary to those we have mentioned. [Humphry v. Coquillard Wagon Works, 132 Pac. (Okla.) 899; Bailen v. Badger Import Co., 154 N. W. (Nebr.) 850; Traeger v. National Surety Co., 212 Ill. App. 267.] We believe, however, that the cases first cited are more in accord with the purpose and intent of the Bulk Sales Statutes than those holding to the contrary. Those cases holding to the contrary, it seems to us, have given the bulk sales statutes a strict and narrow construction. The theory that the bulk sales statute was in derrogation of the common law seems to have had some influence in Balter and Miller v. Crum et al., 199 Mo. App. 380, 203 S. W. 506; but the Legislature in 1917, Laws 1917, p. 324, amended section 8047, Revised statutes 1909, now- section 7084, Revised Statutes 1919, pertaining to the common law, by providing that no statute shall be limited in its scope or effect for the reason that the same may be in derrogation or in conflict with the common law, but that such acts shall be

liberally construed so as to effectuate the true intent and meaning thereof. It is our conclusion that the assignment here is not such a "sale, trade or other disposition" as these terms are used in our Bulk Sales Statute.

Is the assignment here valid as a common-law assignment for the benefit of creditors? This question requires an analysis and construction of the deed of assignment. One of the essentials of this character of assignments is that it shall be unconditional so far as the assignor is concerned. That is, the assignor cannot by the deed of assignment vest title in the assignee, and at the same time retain the right of disposition. The assignor, Drees Hardware & Furniture Company, by paragraph 7 reserved the right to dispose of the property attempted to be conveyed for the period of 6 days as will be seen by reference to said paragraph 7. The assignment was on February 7th, and plaintiff attached on February 10th before the expiration of the time in which the assignor might sell regardless of the deed of assignment. It is true that the next paragraph provides that "in the meantime" the assignee or trustee shall take and is given the exclusive possession; but if paragraph 7 is given effect, and had it turned out that the assignor had sold "in the meantime," then it is apparent that the assignee would not have had absolute dominion and control of the property with power to dispose of same. It is held in Swearingen v. Slicer, 5 Mo. 241, that a deed of assignment by a debtor to a trustee for the benefit of certain preferred creditors, provided they would release the debtor from further liability, is of no avail until executed by the creditors, and that where an execution or an attachment is levied before such deed has been so executed, the levy has the preference. This question seems to have been raised in Woodson v. Cason, 135 Mo. 521, l. c. 527, 35 S. W. 1005, 37 S. W. 197, but was not determined. The court there used this language: "It is said, however, that the trustee was not entitled to the possession of the property

until default was made in payment of the debts. Without passing on this objection it is sufficient to say that default had occurred before the property was taken from plaintiff under the writs of attachment, and, at that time at least, he was in the lawful possession, if the mortgage was valid.'' But in our case in view of paragraph 7 the property had not vested absolutely in the assignee prior to plaintiff's attachment. A rather full discussion and exposition of the conditional assignment may be found in the note to Alliance Milling Co. v. Eaton & Co., 24 L. R. A. 369. In Meston v. Crawford, 190 S. W. (Mo. App.) 391, this court held that a purported assignment for the benefit of creditors under which the assignor attempted to retain control of the property was fraudulent and void; that it is req-uisite to the validity of such an assignment that the transfer to the trustee be absolute.

It is provided in paragraph 8 that ''the trustee shall sell the merchandise, fixtures and other property at public or private sale, with or without notice, in bulk or at retail, as to him may seem best for all concerned, ''provided a majority of the creditors representing a majority in amount of the debts do not in writing demand otherwise. And if the creditors make such demand the trustee under paragraph 8 shall ''sell all or any portion of the property'' to the highest bidder at public auction for cash. This provision of paragraph 8 could easily give absolute control of the assigned estate into the hands of the trustee and the majority, regardless of the welfare or wishes of the minority; and the business might be carried on at retail indefinitely. Another unreasonable feature of this paragraph is that the affidavit of the trustee as to notice shall be conclusive. In Meston v. Crawford, supra, it was held that the assignment by which the trustee was given power to continue in the retail business was fraudulent and void for placing no limit upon the term of the trustee. The purported assignment in the Meston case is set out in the opinion, and a comparison discloses that there was

no more of a limit placed upon the term of the trustee in that case than in the case at bar.

.Paragraph 12 provides that "for the purpose of ascertaining the facts regarding the amount due any of said creditors, said trustee is authorized to require of them itemized and verified statement of their accounts . . . and to demand from them such additional legal and proper evidence as he shall deem necessary." This provision undertakes to control the manner by which a creditor may establish his claim. It would require a creditor to submit his claim to the trustee, and accept his judgment. If the trustee should *deem necessary* "additional legal and proper evidence," it might result in a just claim being arbitrarily rejected. The courts have always been open to a creditor where he may establish his claim against his debtor, and such debtor cannot close that forum to his creditor and substitute one of his own choosing without his creditor's consent. This tends to lead at least to an indirect control of the property by the assignor, and certainly forces the creditors to an arbitrary arbiter solely of the grantor's choosing. The object sought in these common law assignments is to avoid the delays and expense incident to statutory assignments, but delay and expense, if it be conceded that such results from a statutory assignment, are more to be desired than an arbitrary injustice for which there would be no redress under such instruments as here if held valid, except possibly after paying more dearly in expense and delay than would be the case in a statutory assignment. Paragraph 12 provides further that "no creditor holding as security any property of the grantor shall be entitled to the benefits of this agreement unless such creditor shall first surrender such property to the trustee herein to be administered in accordance with the terms of this conveyance." If a creditor were well secured he might not be concerned by such a provision, but if only partially secured it would be otherwise. Under this provision partially secured creditor must surrender

his security and sacrifice his diligence, or be absolutely barred from participating in the assigned estate. Such provision is contrary to settled law, and is most unreasonable. The assignment did not destroy or affect any valid subsisting lien. Drew Glass Co. v. Baldwin, 27 Mo. App. 44; Reitz v. Hayward, 100 Mo. App. l. c. 225, 73 S. W. 374, and the assignor could not by his deed of assignment require a secured creditor to surrender his security in order to participate in the assigned estate. The provision last mentioned is perhaps not involved in the case at bar, but we mention it as showing the general tenor of the deed of assignment. Without further discussion we condemn the remaining provisions of paragraph 12 pertaining to the consequences if a creditor fails or refuses to be bound by the terms and conditions of the deed of assignment; and also we condemn the last provision in said paragraph 12 as to the consequences to a creditor not named, and who shall fail to claim under the assignment within four months. Common law assignments such as was attempted here may perhaps serve a good purpose, and may be preferred over the statutory assignment, but it must be remembered that the insolvent debtor cannot by such assignment impose upon his creditors, against their will and consent, unlawful and unreasonable conditions. It is our conclusion that the deed of assignment is void as to all creditors who did not consent to and accept its terms; and is such an assignment as is defined in section 2276, Revised Statutes 1919. Plaintiff neither consented to nor accepted under said deed of assignment, hence as to her said deed of assignment is void, and the trustee was not entitled to recovery on his interplea.

The judgment below should be reversed, and it is so ordered. *Farrington, J.,* concurs. *Cox, P. J.,* not sitting.