PINNEO *et al.*, Respondents, v. HART *et al.*, Appellants.

1. A general assignment made by a debtor for the benefit of his creditors is not entirely invalidated by the fact that some of the claims are fictitious and fraudulent, and known to be such by the assignee; the participation of the assignee in the fraud contemplated by the debtor furnishes no obstacle to the enforcement of the rights of the *bona fide* creditors. If the assignee is disposed to promote the fraudulent purposes of the grantor, he may be displaced and another appointed. The fraudulent claims can be contested as well in the administration of the effects by the assignee, under the orders of the court, as in a suit by an attaching creditor.
2. Such a deed of assignment would not, under such circumstances, be void, although all the honest creditors should repudiate it.

*Appeal from St. Louis Court of Common Pleas.*

On June 26, 1854, the plaintiffs, members of the firm of Pinneo & Co., commenced a suit by attachment against Eugene Fribourg, and summoned the defendants Hart & Jecko as garnishees. As the ground of attachment the plaintiffs charged that Fribourg had fraudulently concealed and disposed of his property and effects so as to hinder and delay his creditors. Fribourg filed a plea in the nature of a plea in abatement. On the trial of the issue thus raised there was a verdict for plaintiffs. As between the plaintiffs and the garnishees the case turned upon the validity of a certain deed of trust dated June 7, 1854, by which Fribourg and his wife conveyed to the garnishees a certain stock of millinery goods, for the benefit, first, of certain creditors named in a schedule B. annexed to the assignment; and secondly, of certain creditors named in schedule C. thereto annexed. The plaintiffs in their allegations set forth that the indebtedness set forth in the schedule B. was false, fraudulent and fictitious; and that the conveyance was fraudulent and made with intent to hinder and delay creditors, of all of which the assignees had notice. The garnishees took possession of the goods and sold them and had the proceeds ($1,465.20) thereof in their hands when they were summoned. The preferred creditors in schedule B. in the deed of assignment were Louis Block,

father of Mrs. Fribourg, for $1,150, borrowed money; Emanuel Block, brother of Mrs. Fribourg, for wages, $300; Delphene Block, sister of Mrs. Fribourg, for wages, $300. Schedule C. was a list of genuine creditors, New York merchants. Evidence was adduced showing that the claims set forth in schedule B. were fictitious and fraudulent, and tending to show that the assignees were cognizant of their fictitious character. The plaintiffs were among the creditors named in schedule C. None of said creditors named in schedule C. ever presented their claims for allowance. Some of them sued Fribourg by attachment and summoned Hart & Jecko as garnishees.

The court, of its own motion, gave the following instructions: " 1. If the jury believe from the evidence that the preferred debts mentioned in schedule B. in said conveyance of June 7, 1854, were not real and *bona fide*, but were sham and pretended debts, and if Fribourg made and contrived the said conveyance with the fraudulent intent to hinder, delay or defraud his real creditors in the collection of their demands; and if, also, the garnishees, Hart & Jecko, at or before the time said conveyance was made, had notice of the said fraudulent intent of Fribourg ; and if, moreover, the jury further find that the creditors mentioned in schedule C. in said conveyance, dissented from and repudiated it, then the jury, if they find all the above facts to be true, will find a verdict for the plaintiffs. 2. The court further instructs the jury that, notwithstanding part of the debts secured by said conveyance were fraudulent and fictitious, and notwithstanding Fribourg made and contrived the same with the fraudulent intent to hinder, delay or defraud his creditors, they will find for the defendants (the garnishees,) unless they also find the defendants were privy to or had notice of the fraudulent intent of Fribourg, at or before the time the conveyance was made."

The court, at the instance of the plaintiff, instructed as follows : " 1. In order to bring home to the defendants, Hart & Jecko, notice of the fraudulent acts and intentions of

Eugene Fribourg, positive and direct testimony is not indispensable; it is sufficient if the evidence satisfies the jury that the execution of the said conveyance was attended with and surrounded by such manifestly suspicious acts and circumstances, as that any man of ordinary intelligence and observation must have known that it was being executed for a fraudulent, and not for an honest purpose. 2. It is not necessary that fraud should be proved by direct and positive testimony; but it is sufficient if from all the facts and circumstances the jury are satisfied that it existed."

The following instructions asked for by defendants were given: "1. The records of the suits of Pinneo and others against Fribourg and wife, read in evidence, ought not in anywise to be considered by the jury in this case as evidence of any notice to the garnishees of fraud in the grantors to the deed read in evidence. 2. Unless the jury shall believe from the evidence that the deed read in evidence was made for the purpose of fraud, and not for the purpose of securing a *bona fide* indebtedness; and that the garnishees in this case, at the time of said conveyance, had notice of such evil and wrongful purpose on the part of the grantors, they ought to find for the garnishees. 3. The deed read in evidence is *prima facie* evidence of the debts therein named, and unless contradicted or successfully impeached by evidence, is proper and competent evidence before the jury of said debts. 4. If the sole purpose of the conveyance read in evidence was the discharge of honest debts, due at the time by the grantors, then said deed is not fraudulent, notwithstanding such conveyance may have had the operation of delaying the creditors of the grantors."

The court refused the following asked by defendants: "1. If the deed read in evidence was made to the garnishees to secure the payment of *bona fide* debts, due by the grantors to third parties, this constitutes a valuable consideration, in itself sufficient to pass the property to the garnishees in trust for the said creditors, and the same is not subject to garnishment in this case. 2. Unless the jury shall believe

from the evidence that, before or at the time of the execution of the deed read in evidence, the garnishees in this case had notice that the said conveyance was made for the purposes of fraud, and that said deed was so made for the purposes of fraud with said notice to said garnishees, they ought to find for the garnishees. 3. A person in embarrassed or insolvent circumstances has a perfect right to convey his property for the benefit of part of his creditors to the exclusion of others; and if they shall believe from the evidence that the deed read in evidence was made by Fribourg and wife for the purpose of first securing the persons named in schedule B., and that at the time of said conveyance the grantors in said deed honestly owed said persons mentioned in said schedule, and that the principal object of said deed was for the purpose of paying them, then said deed is not fraudulent, but good in law, and the jury ought so to find. 4. If the jury shall believe that at the time of the execution of the deed read in evidence the grantors were indebted unto the persons named in schedule B. as therein alleged, and that said deed was made for the purpose of first securing them, then the proceeds in the hands of the garnishees is properly applicable to the payment and discharge of said debts, and is not subject to garnishment in this case, and the jury ought so to find."

The jury found for plaintiffs.

*Hamilton*, for appellants.

I. The case made by the plaintiffs, in their allegations, is simply this: A. makes a deed of trust to B., for creditors named in schedules Nos. 1 and 2. Those in No. 1 are alleged to be fraudulent, whilst those in No. 2 (amongst whom are the plaintiffs) are unquestioned; and not only is nothing alleged from which it can be inferred that the trust is terminated, but on the contrary, what is stated (and which stands admitted by the answer) is a technical admission that it still continues — " nothing having been done by the assignees under the statute." The plaintiffs charge the assignees with

notice that the debts mentioned in schedule No. 1 were ficti-
tious and fraudulent. The question then is, do these facts,
viz., the fraudulent preferences, and notice thereof on the
part of the assignees, entitle the plaintiffs to the whole of the
funds in the hands of the assignees, to the exclusion of the
other creditors in schedule No. 2? The case falls entirely
within the principle of Hardcastle v. Fisher, 24 Mo. 70.
There, it is true, the assignees had no knowledge of the
fraud; but no reliance was placed upon that circumstance.
There were creditors who were guilty participants, and hence
the question came fairly up, whether the maxim, "void in
part, void in toto," should be adhered to. The court discri-
minated between the innocent and guilty parties to the trans-
action, and the fact that there were fictitious claims put into
the assignment by the contrivance of the assignors and those
supposed to be creditors, presented no obstacle to the enforce-
ment of the trust for the benefit of the honest parties. The
decision is based as well upon our assignment law as upon
the authorities cited, and leaves no doubt but that the result
would have been the same had it been shown that the as-
signees participated in the fraud. To the cases cited and
approved by the court may be added: 1 Smith, N. J. 124; 9
Pick. 176; 14 Ala. 559; 16 ib. 568; 18 Ark. 138; 6 Humph.
514; 7 Wheat. 557. The position that notice by the assignee
of the fraudulent conduct of the assignor will vitiate the as-
signment, derives no support from Gates v. Labeaume, 19
Mo. 28. There, as here, the proceedings were against the
signees (who were not creditors), as garnishees. Two ques-
tions arose: 1, whether the deed was fraudulent on its face,
and 2, whether the facts in proof made it void as to the
assignees and creditors of the assignor. The court having
answered the first question in the negative, conclude that the
evidence did not connect the assignees with any fraudulent
act of the assignor, and add: "The property was vested in
them for the benefit of persons who are not to be affected by
any act of Claverdetscher (the assignor) without their know-

ledge." Since these decisions there is no ground for saying that an inquiry into the conduct and motives of the assignee can be at all material, except where he is himself a creditor and then only to the extent of his claim. Such were the cases of Stewart v. Wimer (not reported), and Wise v. Wimer, 23 Mo. 238. Both were actions of trespass by the assignee, for an illegal seizure of the property assigned; in both the assignee was a creditor. The court say: " Fraud must be brought home to the assignee to make the assignment void, so far as his rights are concerned. In order to affect the assignee he must be charged with complicity in the fraud of the assignor." In the present case the assignees are mere volunteers, with no substantial interest under the deed, taking only the technical title. They are in no sense the agents of the assignors, but hold for the benefit of the creditors. Being merely nominal and not real parties, no act of theirs, unknown to those beneficially interested, will be allowed to break up the trust, or deprive them of its benefits. The creditors are not mere volunteers, and a valuable consideration and *bona fides* on their part will be taken to supply both those qualities in the assignees. Certain general principles are invoked on the other side. Thus, it is said that " by the general law the selection of an insolvent or incompetent assignee, or one who was privy to the fraud of an assignor, or entirely subservient to his will, rendered the assignment fraudulent and void ;" and for these several positions, Burrill on Assignments, p. 66, 67 is cited. The reference as to the effect of the assignee's participation in the fraud is clearly a mistake ; and it will be found on an examination of the authorities that the cases range themselves into two classes; according to the one of which, fraud on the part of the assignor alone vitiates the whole trust ; but the other upholds the transaction, unless it be shown that the beneficiaries concurred in the fraud. According to neither is the intent of a mere volunteer assignee a material inquiry. So, too, whether the assignee be insolvent or incompetent,

whether he may be supposed to be under the direct influence of the assignor or not, the creditors are sufficiently protected by the bond and security which the statute requires, and they can at all times enforce obedience to the law. Again: it is said that the assent of creditors will not be presumed where the deed is fraudulent, even where the assignee was not a party to the fraud. The answer is, that neither the title of the assignee nor the rights of creditors depend upon any formal act of assent. Creditors can only take by proving up their claims under the statute. Our assignment law ought to control this question. Whether the assignees are regarded as trustees appointed by contract or in any sense official trustees, their authority and duty are clearly defined by statute; and they are subject to the supervision and control of the court. So long as there are honest creditors, those duties remain whether fraudulent debts are set up or not. The legislature anticipated the presentation of unfounded claims, and, as far as practicable, have guarded against them; and the court can dismiss assignees for improper conduct. In view of our statute, there is a peculiar difficulty in saying that mere notice on the part of the assignee, that a fictitious claim is inserted into the schedule handed in by the assignor, necessarily and conclusively stamps him as a participant in the fraudulent scheme, and that it can have the effect of breaking up the trust. He is to require proof of all claims presented to him for allowance. His knowledge that a particular claim is unfounded may be perfectly consistent with an intention on his part, in the fair and honest discharge of his duties under the law, finally to challenge and reject it. Nor is the matter confided to him alone, for any party interested may have it referred to a jury. The true rule, then, in a case such as this, we submit, is, to regard the title as in the assignees, where the deed has vested it,—purge the trust by rejecting the unfounded claim, and administer the fund for the benefit of those justly entitled. The assignees were not, therefore, subject to the process

of garnishment and should have been discharged on their motion.

*S. A. Bennett* and *Burke*, for respondents.

I. The instructions given by the court of its own motion were correct, even more favorable to the garnishees than the law warranted. They required the jury to find four facts before they could return a verdict for the plaintiffs: 1st, that the debts named in schedule B. were sham and pretended; 2d, that Fribourg made the assignment with fraudulent intent; 3d, that the assignees had notice of the fraud; 4th, that the creditors named in schedule C. had repudiated the deed. The first and fourth fact alone would have been sufficient. The assigned fund reverted in that case to the assignors and was subject to attachment. The first and third facts alone, or the second and third alone, would have enabled the plaintiffs to recover. If the assignees are privy to the fraud, the deed is absolutely void against an attaching creditor, even though other creditors, who have been less diligent in levying their attachments, may think it for their interest to let the assignment stand notwithstanding the fraud. (Gates v. Labeaume, 19 Mo. 17; Hardcastle v. Fisher, 24 Mo. 70; Tatum v. Hunter, 14 Ala. 557.) No title passes to the assignee as against any creditor. The decision of the assignees upon any claim is final unless, before it is made, some person interested shall request it to be referred to a jury. (Sec. 20.) That the assignees are privy to the fraud is not one of the reasons for which the circuit court is authorized by statute to remove them. (Sec. 23–4–5.) By the general law, the selection of an incompetent or insolvent assignee, or one who was privy to the fraud of the assignor or entirely subservient to his will, rendered the assignment void. (Burrill on Assign. 66, 67.) The instructions given at the instance of the plaintiffs are correct. (3 Myl. & K. 581; 11 Sm. & Marsh. 581; 2 Paige, 202; 17 Verm. 329; 9 Conn. 286; 4 Verm. 405; 1 Curt. 504.) The instructions asked by defendant and refused were properly refused.

NAPTON, Judge, delivered the opinion of the court.

Where a debtor makes a general assignment of all his property for the benefit of all his creditors, we are unable to perceive any reason for disturbing this disposition of his property, upon an allegation that some of the claims in the list of preferred debts are fictitious, and that the assignee was aware of their fraudulent character. How can the participation of the assignee in the fraud contemplated by the debtor furnish any obstacle to the *bona fide* creditors, since the control invested by our statute in the court over the entire administration of the trust? If the trustee is disposed to advance the fraudulent purposes of the assignor, he can be displaced and another substituted. If the assignor has put down fraudulent and fictitious claims in his schedule, they can be contested as well in the administration of the effects by the assignee, under the orders of the court, as in a suit by an attaching creditor. The only difference is, that the attaching creditor, if successful, sweeps away the whole fund, and a proper administration of it under the assignment distributes it equitably among all the creditors. Some intimations have been thrown out in one or two opinions of this court, from which it seems to have been inferred that a knowledge on the part of the assignee of the fraudulent designs of the assignor would let in the attaching creditor; but the cases did not turn upon the point. The judgment of the court in all the cases sustained the assignments; and although the observation is made that the fraud charged must be brought home to the assignee as well as the assignor to warrant the court in treating such assignments as nullities, yet, as the complicity of the assignees was not set up in these cases, the effect of it, if established, was not in question. (Gates v. Labeaume, 19 Mo. 17; Wise v. Wimer, 23 Mo. 238.) However this may be, as our statute law now stands in reference to this class of instruments, we see no propriety in allowing an attaching creditor to assail an assignment merely because the assignee is alleged to be a

participator in the fraud. If he is, let the court, which has jurisdiction over the administration of the assignment, displace him and appoint another. It may be also observed, that it is not easy to see how the mere knowledge or suspicion of an assignee that some of the preferred claims enumerated in the assignment are fictitious, leads to an inference that he is disposed to promote the fraudulent purposes of the grantor. He may intend to disregard them, and administer the fund according to law; but his purposes in relation to the trust confided to him are not important, except so far as they may influence the creditors to ask his removal. There is no necessity, in order to get rid of the assignee or of fictitious claims inserted in the deed, that the assignment should be annulled altogether, and the property left to the first attaching creditor or to a general scramble.

The judgment is reversed and the cause remanded. The other judges concur.