## BOLTZ *v.* EAGON.

*(Circuit Court, E. D. Missouri, E. D.* March 27, 1888.)

**1. ATTACHMENT—PROPERTY SUBJECT TO—PROPERTY IN HANDS OF ASSIGNEE FOR BENEFIT OF CREDITORS.**

Property in the possession of an assignee for the benefit of creditors under the Missouri statute is not exempt from seizure on a writ of attachment issuing from the federal court in a suit by a non-resident against the assignor.

**2. SAME.—RIGHTS OF ASSIGNEE—INTERVENTION.**

Where property assigned as provided in the Missouri statute for the benefit of creditors has been seized under a writ of attachment issuing from the federal court, in an action by a non-resident against the assignor, the assignee may intervene in the attachment suit, and have his right to the property determined.

In Equity. On motion to quash a writ of attachment.

*Dyer, Lee & Ellis,* for plaintiff.

*Bond & Mills,* for intervenor.

THAYER, J., (*orally.*) In this case a writ of attachment was sued out by the plaintiff on the 13th of March of the present year, and the writ was levied upon a stock of merchandise. On the 16th day of March, the marshal obtained an order of sale *pendente lite,* and the property has been advertised for sale on the 28th of this month. On the 21st of March, G. Lehman filed an intervening petition in the case, representing that on the 8th day of March H. C. Eagon made a general assignment for the benefit of creditors to himself as assignee; that on the 9th day of March he took possession of all the property of Eagon, under such assignment, and was proceeding with his duties as assignee, when all of the property covered by the assignment was taken out of his possession by the marshal, under the writ of attachment against Eagon. In view of these facts, the assignee asks to have the writ of attachment quashed, and the property released to him as assignee for the purpose of administration under the state law concerning assignments.

The application is based upon the ground that the property in his hands was in fact in the custody of the state court having charge of the assignment, and for that reason was not subject to seizure under a writ of attachment. We think the assignee acted properly in filing the intervening petition in this case. The practice of filing such intervening petitions for the protection of the rights of third parties is expressly recognized in the case of *Krippendorf* v. *Hyde*, 110 U. S. 276, 4 Sup. Ct. Rep. 27; also in the case of *Gumbel* v. *Pitkin*, 113 U. S. 545, 5 Sup. Ct. Rep. 616; and in the last-named case, (8 Sup. Ct. Rep. 379,) when it came up for final hearing in the supreme court of the United States, the practice was again approved; so that it must be conceded that the assignee has a right to file an intervening petition of any sort deemed necessary for the protection of his interest and the trust he represents. But we think it very clear that the property when levied upon under the writ of attachment issued by this court (although the property was then in the possession of the assignee) was not in the custody of the law, and that the motion to quash the attachment must therefore be overruled. It has never been the rule in this state that property held by an assignee is in the custody of the law in such sense as to exempt it from seizure under a writ of attachment issued against the assignor. One of the recognized methods in this state of testing the validity of a voluntary assignment is to sue out an attachment against the assignor, and levy upon the assigned effects. In the case of *Wise* v. *Wimer*, 23 Mo. 238; *Pinneo* v. *Hart*, 30 Mo. 561, and in the case of *State* v. *Keeler*, 49 Mo. 548, and in some other cases which I do not recall, creditors sued out attachments against the assignors and caused the same to be levied upon the assigned effects in the hands of the assignees. In those cases it was held that the title of the assignee would prevail over that of the attaching creditor, unless it was shown that both the assignor and the assignee had participated in a scheme to defraud the creditors of the assignor. Some discussion was had in one of the cases as to the character of the fraud on the part of the assignee that would suffice to destroy his title under the assignment, and it was held, in effect, that the assignee must actively participate in some scheme to defraud, concocted by the assignee, in order to impair his title. But it was not denied in any of the cases that a creditor of the assignor, if he choose to take the risk, might test the validity of the assignment by suing out an attachment, and causing the same to be levied on the assigned effects in the hands of the assignee. Now, as such practice is sanctioned by the state courts, and as property held by an assignee is not there regarded as being in the custody of the court so as to preclude a creditor of the assignor from attaching it if he sees fit, it follows that we must accord to a non-resident creditor suing in this court the same right to test the validity of an assignment by levying on the assigned effects that would be accorded to a creditor suing in the state courts.

It is furthermore suggested as a reason why we should release the attached effects that, inasmuch as the marshal has levied on the property, the assignee is deprived of the right to reclaim the property *in specie* by

a writ of replevin, as he might do if the property had been seized by the sheriff of the city of St. Louis, under process emanating from a state court.

It is furthermore urged that the assignee desires to regain possession of the property for the purposes of the assignment, and that he ought to have the privilege of reclaiming the property by some form of proceeding, and that he should not be left to his remedy by a suit against the marshal for a wrongful levy. We have given attention to this plea, and we must concede that, according to the authorities cited, the property in question cannot be replevied from the marshal under a writ emanating from the state court. It was so held in *Covell* v. *Heyman*, 111 U. S. 176, 4 Sup. Ct. Rep. 355, and in several other cases; and that is clearly the law. But we conceive that, while it is true that replevin will not lie against the marshal in the courts of the state, yet that the assignee may file an intervening petition in this case, setting up his claim to the property; and that under such a petition an issue may be framed, and tried here, and his right to the property be determined as effectually in this case as by a suit in replevin brought in the state court or in the federal court. In a very late case decided by the supreme court of the United States, (the case before referred to of *Gumbel* v. *Pitkin*, 8 Sup. Ct. Rep. 379,) we understand that the right to intervene under the circumstances which now exist, is expressly recognized. When the marshal of this court, under an execution or attachment, seizes property which is claimed by a third party, it may often happen that the claimant for some reason desires a return of the property *in specie*, and that his rights will not be fully secured by an action at law against the marshal for an unlawful levy. In all such cases we think he may intervene in the suit in which the attachment or execution issued, and have his right to the property determined by such intervention. Inasmuch as replevin will not lie against the marshal, no remedy is within reach of the claimant to recover the property itself other than the one last suggested, and we think that the remedy by intervening petition filed in the case is suggested and fully approved in the case last referred to of *Gumbel* v. *Pitkin*.

In the present case, therefore, if the assignee desires for any reason to reclaim the property now in the hands of the marshal, and does not desire to prosecute an action against the marshal for a wrongful levy, we will grant him leave within five days from this date to file an intervening petition, setting up his title to the property; and under such petition we will frame an issue and try his right to the property, and if it is found that he is entitled to it as against the attaching creditor, we will order the marshal to turn the property over to him *in specie,* but in the mean time, as the sale of the property is advertised for the 28th instant, we will direct the marshal to postpone the sale. The motion to quash the attachment, however, is overruled.

BREWER, J., concurs.