NORTHRUP NATIONAL BANK, Appellant, v. J. E. FRANKLIN, Defendant, L. E. MITCHELL et al., Garnishees, Respondents.

St. Louis Court of Appeals. Opinion Filed June 7, 1921.

1. **ASSIGNMENTS FOR BENEFIT OF CREDITORS: Must be for Benefit of All Creditors: Preferences: Void.** Under section 623, Revised Statutes 1919, every assignment for the benefit of creditors is for the benefit of all creditors; that anything contained in such instrument which prefers one creditor over another is void, and that from the proceeds of the assets all debts and liabilities are to be paid *pro rata;* therefore, although an assignment for the benefit of creditors possessed infirmities of preferences such objectionable features in an assignment do not vitiate the entire instrument, but everything therein which is intended or is in effect preferential must be stripped therefrom.

2. ———: ———: **Assignment of Assets Without Reservation: All Creditors on Equal Footing: Absolute.** Where the debtor conveyed and assigned all his property, except personal effects of little or no value, to trustees, to be disposed of for the benefit of all his creditors, charging himself in the assignment to execute and deliver to the trustees any further conveyance which might be found necessary to make the transfer of all his property complete and

absolute, the trustees being obligated to pay to the creditors the net amount realized without preference and in that proportion which the indebtedness of the creditors shall bear to the total amount of the indebtedness, *held* an absolute assignment of the assets of the debtor to the payment of his creditors without any reservation or control over his property by the debtor and not a transfer to secure debts, and, therefore, not such an instrument as is denounced by section 2276, Revised Statutes 1919.

3. ———: ———: ———: **Fraudulent Conveyances: Attaching Creditors: Assignment Not Invalid.** An assignment of assets for the benefit of creditors *held* not fraudulent and void as to attaching creditors as not requiring definite disposition of the property or a settlement with creditors, the assets consisting of land which the trustees were but to sell and divide the proceeds equally among the creditors.

4. ———: **Omission to Acknowledge and Record Instrument: Not Invalid.** An omission to acknowledge and record an assignment for the benefit of creditors did not invalidate the instrument.

5. ———: **Powers Given Trustee Beyond Statute: Do not Exist.** An assignment for the benefit of creditors, otherwise valid, wherein powers are intended to be given trustees above and beyond the statute and which our law does not justify, such powers will be held not to exist.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Vital W. Garesche*, Judge.

AFFIRMED.

*Judson, Green & Henry* for appellant.

(1)    The validity of the agreement of July 3, 1914, between Franklin and this committee is directly challenged by the pleadings in this case, and, if it is illegal, the garnishees are liable. Donk Bros. Coal & Coke Co. v. Kinealy, 81 Mo. 646; Epstein v. Clothing Co., 67 Mo. App. 221; Gutta Percha Co. v. Supply Co., 149 Mo. 538; Calumet Paper Co. v. Printing Co., 114 Mo. 331; Hungerford v. Greengard, 95 Mo. App. 653. (2) No instrument can be construed as an assignment for the

benefit of creditors under the Missouri statute, unless the parties thereto at the time of its execution intended that it should operate as a statutory assignment. Hargardine v. Henderson, 97 Mo. 375; Western Mfg. Co. v. Woodson, 130 Mo. 119; Claflin v. Lubke, 162 Mo. 649; In re Assignment of Howard, 128 Mo. App. 444; Haase v. Distilling Co., 64 Mo. App. 131; Dry Goods Co. v. Grocer Co., 68 Mo. App. 290; In re Assignment of Zwang, 39 Mo. App. 356. (3) The fact that Franklin was insolvent, that he conveyed all of his property to this committee, and that there is no defeasance clause in the agreement, do not make it an assignment under the statutes, when the express terms of the instrument itself so clearly show that it was not intended by the parties thereto. Haase v. Distilling Co., 64 Mo. App. 131; Dry Goods Co. v. Gro. Co., 68 Mo. App. 290. (4) This agreement is fraudulent and void on its face because it authorizes this committee to hold and rent grantor's lands and property and carry on the grantor's business indefinitely, and fixes no time for the sale thereof. Donk Bros. v. Kinealy, 81 Mo. App. 651, 652; Gutta Percha Co. v. Supply Co., 149 Mo. 558; Oliver Gro. Co. v. Miller, 53 Mo. App. 107; Meston v. Crawford, 190 S. W. 393; Bump on Fraudulent Conveyances, 392; Wait on Fraudulent Conveyances, secs. 330 and 331; Union Bank v. Bank of Kansas City, 136 U. S. 223; Hunferford v. Greengard, 95 Mo. App. 653. (5) This agreement is fraudulent and void as to attaching creditors because it authorizes these garnishees to reconvey said property to Franklin whenever they might deem it best to do so. See last paragraph of 5th Clause; Bump on Fraudulent Conveyances, sec. 25; 20 Cyc, p. 560; 14 Am. & Eng. Ency. of Law, p. 444. (6) This agreement is fraudulent and void because it exempts the members of this committee from all liability or responsibility for their acts thereunder. Wait on Fraudulent Conveyances, sec. 344; Wolf v. Sprague Mfg. Co., 49 Conn. 338; Litchfield v. White, 7 N. Y. 442. (7)

This agreement is fraudulent because it attempted to coerce Franklin's creditors by compelling them to deposit and surrender their own securities before they could share in its benefits. It also coerced them by compelling them to consent to its terms and refrain from suing Franklin as a condition of sharing therein. 4 Cyc. 197; Grocer Co. v. Miller, 53 Mo. App. 107; Brown v. Knox, 6 Mo. 302. (8) This agreement is fraudulent and void because it requires the creditors of Franklin to surrender their securities to the control of this committee before their claims against Franklin can be allowed thereunder. Wakemann v. Graves, 4 Paige (N. Y. Chanc.) 23; McConnell v. Sherwood, 84 N. Y. 522; Mussey v. Noyes, 26 Vt. 462; Keevil v. Donaldson, 20 Kans. 165. (9) Such provisions render an agreement of this character fraudulent and void no matter whether the instrument in question be in the form of an assignment to an assignee or trustee for creditors without a defeasance clause, or of a conveyance to a trustee with a defeasance clause. Meston v. Crawford, 190 S. W. 393; Bump on Fraudulent Conveyances, sec. 390; Dry Goods Co. v. Gro. Co., 68 Mo. App. 290; Haase v. Distilling Co. 64 Mo. App. 131; In re Assignment of Howard, 128 Mo. App. 444; Brown v. Knox, 6 Mo. 302; Moore v. Carr, 68 Mo. App. 71. (10) This instrument being fraudulent and void on its face at the time this attachment suit was filed and the notice of garnishment served, could not be cured by any benevolent resolutions adopted by the committee two years after the suit was filed to the effect that all creditors of Franklin would be permitted to prove their claims thereunder whether they signed it or not. The character of the instrument could not be changed by any action taken by the committee after the rights of the parties to this suit had once attached. Neither could the provisions of this agreement be altered or changed by the committee without the consent of Franklin, the grantor, and there is no pretence that Franklin ever consented to these changes.

*Jones, Hocker, Sullivan & Angert* for respondent-garnishees.

(1) An absolute transfer of property to raise funds to pay debts is an assignment for the benefit of creditors. 5 Corpus Juris, 1038; State to use v. Benoist, 37 Mo. 509; Crow v. Beardsley, 68 Mo. 438; Hargadine v. Henderson, 97 Mo. 384; Smith v. Thurman, 29 Mo. App. 191. (2) The statute is read into and controls the execution of an assignment for creditors. Departures from the provisions of the law either in its terms or in carrying it into execution will not render it void or justify attachment. R. S. 1919, sec. 623; State to use v. v. Benoist, 37 Mo. 501; Crow v. Beardsley, 68 Mo. 435; Bryan v. Brisbin, 26 Mo. 423; Puineo v. Hart, 30 Mo. 561; Hardcastle v. Fisher, 24 Mo. 70; Jeffries v. Bleckmann, 86 Mo. 357; 2 Ruling Case Law, 669, 670; Hibbin v. Haley (Ky.), 50 S. W. 252; McFarland v. Bates, 45 Kansas 1; Falk v. Luibis, 6 Colo. App. 473; 5 Corpus Juris, 1136. (3) Even if the assignment is void attachment will not lie. Douglass v. Cissna, 17 Mo. App. 58; Calumet Paper Co. v. Haskell Printing Co., 144 Mo. 331.

DAUES, J.—Appellant in November, 1914, brought suit by attachment against John E. Franklin upon a promissory note for $5000 executed by Franklin to the appellant. The affidavit for attachment sets out concealment, absconding and absenting by Franklin to avoid legal process, and that he had fraudulently conveyed or assigned his property to delay or defraud his creditors, and that he had for the same purpose fraudulently removed, concealed or disposed of his property.

Notice of garnishment under such attachment was served upon the respondents L. S. Mitchell, Richard S Hawes, August Schlafly, August E. Brooker and Samuel C. McCluney. The garnishment cases were consolidated with the attachment suit; the garnishees named filed their answer in which they denied any indebtedness to Frank-

lin, or that they had any property belonging to him in their possession.

Appellant filed a reply, alleging that the garnishees constituted a committee of creditors of the said Franklin to whom he had, by a written instrument, *conveyed all his property of every kind and character, both realty and personalty,* for certain of Franklin's creditors, and that the garnishees as such assignees had in their possession funds and property in excess of $25000; that said assignment was executed without valuable consideration and as security for and to provide payment of claims of only certain creditors against Franklin, and that it was fraudulent and void as to this appellant because of its provisions which authorized the assignees to manage the property so conveyed without time limit in order to liquidate the assignor's affairs and that the assignment was made to defeat and delay the general creditors of Franklin.

To this respondents filed a general denial. The cause was submitted on the pleadings and an agreed statement of facts. On the 8th day of April, 1918, the court rendered judgment in favor of garnishees and allowing them $250 for answering. After appropriate motions plaintiff appealed.

The agreed statement of facts is as follows:

"1. On the 3rd day of July, 1914, J. E. Franklin executed and delivered to the garnishees an instrument in writing, a true copy of which is hereunto attached, marked 'Exhibit A,' and made a part hereof as if fully set out herein.

2. On the 15th day of August, 1914, said garnishees accepted the trust therein set forth and themselves executed the said instrument.

3.- At the time of the execution of this instrument the said J. E. Franklin owed more than seven hundred thousand dollars ($700,000) and was insolvent.

4. The only assets of Franklin which came into the hands, possession or control of said garnishees under said instrument consisted of certain real estate situate

in Pemiscot county, Missouri, which, subsequent to the service upon the garnishees of the writ of garnishment and prior to the filing of their answers herein, the garnishees sold and disposed of for approximately one hundred forty-five thousand dollars ($145,000) net, which money so received they now hold.

5. The garnishees are holding this fund under said agreement of July 3, 1914, and have no other claim thereto. The garnishees, as a creditor's committee under said instrument, have kept a record of their doings, and this record shows the following proceedings of the garnishees at a meeting held by them on the 14th day of September, 1916:

'The question of sending out a letter to the creditors and advertising for proof of ·claims was discussed at length. Mr. Angert stated that, in his opinion, it would be necessary to advertise for proof of claims at some time prior to the payment of any dividend, because, under the law, the committee would be required to distribute the funds proportionately among all creditors of Franklin, whether they signed the agreement or not.

'After a discussion, upon motion duly made, seconded and carried, it was

'Resolved, That the advertisement for proof of claims be deferred for the present, but that the committee would make *pro rata* distribution among all creditors of Franklin, whether parties to the agreement or not.'

The Mr. Angert therein referred to is, and was at that time, the attorney for the garnishees as such committee.

The agreement referred to in this resolution was the paper hereto attached marked 'Exhibit A.'

6. Unless on such facts the garnishees are held liable hereunder, they neither jointly nor severally have in their custody, possession or control any property, moneys, credits or effects belonging to Franklin and neither of them is indebted to him.''

On these agreed facts there was but one question to decide, and that was whether the assignment of July 3, 1914, is by its provisions rendered fraudulent as to attaching creditors who did not consent thereto.

The court below held the agreement to constitute a valid assignment for the benefit of all creditors under our statutes, upon the theory, as indicated by the declarations of law given, that provisions of the agreement in conflict with the assignment statutes, or which exceed the powers permissible under such statutes, were nugatory and inoperative and were to be disregarded, and that the provisions and terms of the assignment statutes were to be read into said assignment, and, further, that the mere fact that the assignment may have hindered or delayed the plaintiff did not render such assignment void in the absence of any showing of fraudulent intent, or the participation of any fraudulent intent by either the assignee or any of the creditors.

The complaint of the appellant here is, that this agreement was not intended to be, and is not in effect a general assignment for creditors as contemplated by Chapter, 4, Revised Statutes 1919, being the provisions on assignment for benefit of creditors, and that the instrument is such as is denounced by section 2276, Revised Statutes 1919. Whereas, it is contended by the respondents that the assignment contains the essential elements required by the statutes, and that the extraneous provisions should be disregarded. And, further, that, if the assignment as such failed, the garnishees must be considered as holding the funds *in trust* as *bailees* for the benefit of all the creditors equally.

The agreement is voluminous, but in view of the character of the controversy it is necessary to set out same with considerable detail.

The instrument is dated July 3, 1914; names Franklin as party of first part, the five named garnishees as a ''committee of the creditors of Franklin'' second party, and the creditors who were to become parties to the agreement, to be called ''depositors'' third party. Then

comes a recital that Franklin represents he is owner of
a large body of land in Pemiscot county, Missouri, and
also in Texas, all incumbered, and that he possesses
notes and other paper, all pledged as security; that he
has furnished a list of his direct obligations, and that
for the "purpose of protecting, conserving and realizing
to the best advantage on the assets . . . and for
"protecting his creditors and of paying to them, in equal
proportions and without priority or preference, the
amounts due them out of said assets," assignor conveys
and delivers to committee, or its nominees, all his assets
for the benefit of his creditors; that committee has con-
sented to act in the event creditors consent.

First. In order to successfully carry out this agree-
ment it is necessary that there be unanimity among the
creditors of said Franklin, and that they approve of the
plan set forth in this agreement by becoming parties here-
to. Accordingly, this agreement shall be executed by the
party of the first part and by the parties of the third part,
but shall be executed by the Committee only in the event
that the Committee, after the creditors of said Frank-
lin have had an opportunity to execute this agreement,
elect to carry it out. If and when the Committee are of
the opinion that they should proceed under this agree-
ment, they shall execute the same and notify each of the
depositors hereunder and the said Franklin that the
same has become effective. If the Committee are of the
opinion that they shall not proceed with the provisions of
this agreement and do not execute the same, then they
shall declare this agreement inoperative and of no ef-
fect, and shall likewise notify the depositors of said
Franklin of such fact.

Second. Said Franklin has executed deeds in blank
conveying the lands owned by him, and has also exe-
cuted blank assignments of certain stocks, notes, con-
tracts and other personal property owned by him, said
assignments covering said personal property whether
pledged or unpledged. Said Franklin states and repre-
sents that said conveyances and assignments cover all

his property, real and personal, except his personal effects and life insurance, which is of doubtful or no value. Said conveyances and assignments and the stocks, notes and other personal property which are unpledged have been delivered to the Third National Bank of St. Louis, in escrow, to be delivered by it to the Committee if and when the Committee shall declare this agreement to be operative as hereinbefore provided; or, in the event that the Committee declares this agreement to be inoperative, then to be returned to said Franklin, or his legal representatives. In the event said deeds and assignments and other papers are delivered to the Committee, it may insert in said deeds and assignments the names of such persons or corporations as the grantees to take title in behalf of the Committee as it may determine, and may cause the certificates of stock delivered by said Franklin to be transferred in its own name or in that of its nominee.

In the event the Committee declares this agreement to be operative, the said Franklin agrees that he will, from time to time, make, execute and deliver to the Committee, or its nominee, such further conveyances, assignments and other instruments in writing as the Committe may request, and that he will take all steps and do all things requested by the Committee to put it or its nominees in full ownership, possession and control of all his assets, except his personal effects, and will assist and co-operate with the Committee in every way requested by them in carrying out this agreement.

Third. The creditors of said Franklin may become parties to this agreement by executing a copy of the same and by depositing with the Third National Bank of St. Louis (hereafter called the "Depositary") the note or notes of the said Franklin held by them, together with any and all collateral, other than vendor's lien notes, on which said Franklin is not liable, which they may hold as security for the payment of said notes. No depositor shall be required to deposit with his note any vendor's lien notes, on which said Franklin is not liable, which he

holds as collateral, and each depositor may collect such notes for his own account, but he or it shall furnish the Committee a list of all such vendor's lien notes held by him or it as collateral. Upon the making of said deposit the depositors shall receive receipts from said bank in which apt reference shall be made to this agreement. Said receipts shall be transferable and all transferees shall become parties to this agreement with like effect as if they had signed the same. Said bank shall hold the notes deposited subject to the order and control of the Committee.

Any creditor of said Franklin, whether his claim be on notes or otherwise, and whether it is evidenced by a direct or primary obligation of said Franklin or by an obligation on which said Franklin is contingently, secondarily, jointly and severally liable, may become a party to this agreement, and, in the case of all obligations and claims not direct or primary obligations of said Franklin, the Committee may not require the deposit of the note or other evidence of the obligation, but may require the creditor to execute such agreement as it may determine, and such creditor shall then be considered a depositor for all purposes under this agreement.

The depositors agree that they will not, so long as this agreement remains in effect, institute, join in or become parties to any proceeding at law or equity or special proceeding in any court for the purpose of enforcing their claim against the first party other than by the Committee as herein provided.

The depositors agree that they will not, so long as this agreement remains in effect, offer for sale or sell, or foreclose in any manner, their respective liens upon the collateral held by them as security for the indebtedness of the first party to them and deposited with the Committee, without the consent of the Committee. If the Committee shall deem it to the best interests of the depositors that certain or all of the collateral held by them shall be sold or offered for sale, it shall notify each of the depositors who hold collateral of the kind so to

be sold, at least ten days prior to the date fixed by the Committee as the date on or after which said collateral may be sold, and the Committee shall cause the depositary to deliver all such collateral to the respective depositors, who shall then be free to foreclose or satisfy their lien thereon, or the Committee may, at the request of any depositor, procure said collateral from the depositary and sell it for the account of the depositor so requesting. In the event the Committee sells any collateral at the request of the depositors and is unable to sell all of such class of collateral, the proceeds of all of such collateral sold by it shall be prorated among the holders for whom the Committee makes the sales in proportion to their respective holdings of such class of collateral.

Upon giving notice to the depositors that they may sell certain collateral, the Committee shall at the same time mail or deliver a copy of said notice to the said Franklin, at the National Bank of Commerce Building, St. Louis, Missouri, and shall give said Franklin notice in the same manner of any proposed sale of collateral by the Committee to be made by the Committee at the request of any depositor, as above provided, two days prior to the date on which the Committee will sell or offer for sale any such collateral. Any sales by the Committee may be at private sale, and said Franklin hereby agrees that in the event notice is given as above provided, any other requirements of notice or of public sale set forth in any note deposited need not be complied with, and the above provisions of this contract shall not be construed to affect the rights of holders of notes wherever the collateral agreements require no notice to Franklin or notice for a shorter period than above mentioned.

In order that the Committee may, as far as possible, protect the value of the collateral deposited, the first party and the depositors authorize the Committee to cause all certificates of stock pledged as collateral to any of the notes deposited, to be transferred to the name of the Committee or to any person designated by it, but all

new certificates of stock issued shall be endorsed in blank and attached to the notes for which the former certificates were pledged, so that the collateral of no depositor shall be altered, impaired or released by reason of such transfer. But any depositor may, at the time he deposits his note, designate any member of the Committee to whom any shares of stock held as collateral to said note shall be transferred, and may from time to time, on notification to the Committee, change the name of the transferee so designated, and the Committee shall at all times cause the shares of stock to be transferred to the name of the party so designated. All shares of stock so transferred to the name of a member of the Committee shall at all times be voted by such member without any direction or control of the remaining members of the Committee, but said shares shall be endorsed in blank and held by the depositary. The depositors shall not by becoming parties to this agreement release, surrender, merge or waive any liens which they may have on any collateral held by them as security for any note deposited.

Any direction given by the Committee shall be full and sufficient authority for any action of the depositary. The depositary shall be liable only for reasonable care in the safe keeping of the deposits and for dealing therewith in accordance with the directions of the Committee.

The Committee may limit the time within which the creditors may become parties to this agreement. Holders of claims or notes not deposited within the period respectively fixed or limited therefor will not be entitled to deposit the same, or to become parties to this agreement, or to share in the benefits thereof, and shall acquire no rights hereunder.

Fourth. The Committee shall have the authority to hold, manage, control, sell, operate, rent and lease the property transferred or conveyed to it; to prosecute or defend any suit at law or equity affecting the title to said property, or in anywise relating thereto, and to settle, arbitrate or compromise any such suit or any matter pertaining to the property transferred or conveyed to

it or which, by the terms of this agreement, should, in the opinion of the Committee, have been so transferred or conveyed; to pay the interest or principal of any mortgage, incumbrance or lien now existing or hereafter created against said property; to pay all taxes or special assessments levied upon said property; to sell any or all of said property for cash or for notes, and upon such terms and conditions and in such parcels as it may deem best; to borrow, from time to time, any sums of money, and to secure the repayment of the same by charge, pledge, mortgage, deed of trust or other instrument in writing upon the property, real or personal, or any of it conveyed and transferred to it by said Franklin; and any and all sums so borrowed shall take priority over the claims of the depositors to the property held by the Committee or the amounts realized therefrom; to pay off and cause to be released and canceled any indebtedness now or hereafter existing against said property; to bid or refrain from bidding at any sale of any of said property, and to hold any property purchased by it either in its own name or in the name of any person or corporation nominated by it; to return to said Franklin and his legal representatives any property which, in the opinion of the Committee, cannot be realized on for the benefit of the creditors; and, in general, to exercise over the property conveyed and transferred to it, or its nominee, the control, power and authority of absolute owner, save and except that the funds realized by it shall be applied by the Committee as hereinafter provided. The Committee may construe this agreement and its construction thereof or action thereunder shall be final and conclusive. It may supply any defect or omission, or reconcile any inconsistency therein, in such manner or to such extent as shall be necessary to carry out the same properly and effectively, and it shall be the sole judge of such necessity.

The enumeration of specific powers hereby conferred shall not be construed as in anywise limiting the general powers herein conferred, and it is hereby intended to con-

fer upon the Committee any and all powers that it may deem necessary or expedient to carry out the purposes of this agreement; and the Committee may exercise any and every such power as fully and effectively as if the same were herein specifically enumerated.

(Then comes a recital that the Committee is authorized to employ and pay counsel and agents.)

The Committee shall . . . receive a reasonable compensation for their services.

The Committee undertakes to endeavor to carry out this agreement, but neither it nor any of the members thereof, nor the Depositary, shall assume any personal responsibility for the execution thereof, or any part thereof, or for the result of any steps taken or acts done for the purpose thereof.

Fifth. The Committee shall, from time to time, as and when the same shall be determined to be payable by the Committee, or when all the property conveyed, transferred to and held by it has been realized upon, pay to the depositors the net amount realized by the Committee. All payments shall be without preference and in that proportion which the indebtedness of the depositor shall bear to the total amount of the indebtedness deposited. The total amount of the indebtedness and the amount of the indebtedness due each depositor shall be fixed by the Committee, for the purpose of making payments, by deducting the amount due on each note or claim, with interest, as therein provided, the value of the collateral held by such depositor, and for that purpose the Committee is authorized to fix the value of all the various kinds of collateral as of a date prior to the payment, which date is to be selected by it. The holders of obligations on which said Franklin is secondarily, or jointly, or jointly and severally, or contingently liable, shall, prior to any payment by the Committee, endeavor to realize on and liquidate the obligations of others than said Franklin on their respective claims, and in the event of their failure to do so, the Committee shall, before making any payments to them, fix the value of all primary or other

obligations thereto and reduce the amount of such claims for the purpose of payments thereon by the value of such obligations so fixed by it, and the Committee's decision as to the amount by which said obligations are to be so reduced shall be conclusive upon all parties hereto.

. . .

If, after this agreement has become effective, the Committee, for any reason, shall consider it expedient at any time to terminate this agreement and not to proced further thereunder, it may do so by giving notice thereof, through the mails, addressed to each depositor and to the said Franklin. The Committee shall thereupon cause the Depositary to deliver to the depositors the notes or other evidences of indebtedness and the collateral thereto deposited by them, and shall convey, transfer, assign and deliver to the said Franklin, or his legal representatives, the property held by it at said time, after deducting therefrom all expenses incurred, including money borrowed by the Committee.

Sixth. When all the expenses contemplated by this agreement shall have been paid, and all money borrowed by the Committee shall have been repaid, and the notes and claims, together with the interest thereon, of the depositors shall also have been paid, then it shall be the duty of the Committee to re-convey the real and personal property, if any, remaining, to the said Franklin or his legal representatives, as before mentioned, at which time this agreement shall cease and determine. This agreement shall likewise cease and determine if and when all the property transferred, assigned and conveyed to the Committee by the said Franklin or at any time held by it shall have been sold and disposed of by the Committee, or otherwise, under the provisions of this agreement, at which time it shall be the duty of the Committee to pay the net amount held by it to the depositors as above provided. Upon the termination of this agreement for such reason the Committee shall return to each depositor all notes and evidences of in-

debtedness, and the collateral thereto, deposited, which have not been paid in full.

Admittedly, the assignment is drawn in a very uncommon manner and contains provisions not comprehended in the assignment statutes. The question arises whether the instrument is, when stripped of impertinent matters, in legal effect, an absolute transfer by Franklin to this committee of creditors, as the assignee, under whatever name, of all his property for the benefit of his creditors generally, or whether there is anything in the instrument which vitiates or destroys such legal effect. This presents a very close and troublesome question. A mere inspection of the paper with its innovations in several particulars gives attention to the objections to same as a general assignment under the statutes.

With one stroke everything contained in this assignment which prefers one creditor over another, either directly or indirectly, must be taken out. Such is the direction of the Legislature. Section 623, Revised Statutes 1919, providing for assignments, contains this clause:

"And every provision in any assignment providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities (including judgments entered by confession thirty days previous to such assignment) shall be paid pro rata from the assets thereof."

Observably, it was the wisdom of the lawmakers to preserve the life of an assignment for creditors, although it possessed infirmities of preferences. Therefore, we must at once strip from this instrument everything contained therein which is intended as or is in effect preferential.

That such objectional features in an assignment do not vitiate the entire instrument but are to be carved out of the instrument, is made clear, we think, by ample authorities. In State v. Benoist, 37 Mo. l. c. 510, the court said:

"In this State we have no bankrupt law, nor any insolvent laws, properly so called; but we have an assignment act, and it has been uniformly held by this court, that every assignment of this nature comes within the purview of that act, and that the property assigned must be disposed of, and the trust executed, in pursuance of the provisions thereof—Manny v. Logan, 27 Mo. 528.

"Provisions that are in conflict with that act will be held void for that very reason; but if otherwise valid, they will be carried into effect, in pursuance of the provisions of that act. It is quite apparent that this assignment was made without any reference to the assignment act, but that alone will not render it fraudulent and void, as against creditors. An assignment of this kind is considered as made upon a meritorious and valuable consideration as between the grantor and the beneficiaries in it, and it will be carried into effect so far as it can be done in accordance with law."

In Crow v. Beardsley, 68 Mo. 435, Judge Henry said:

"Both appellant's and respondent's counsel seem to labor under the impression that the first section of the act in relation to voluntary assignments, W. S. 150, avoids all assignments which give a preference among creditors. We are not inclined to place that construction upon the section. It provides that, 'every voluntary assignment, etc., made by a debtor to any person, in trust for his creditors, shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims.' In other words, whether one or more of the creditors be named it shall nevertheless inure to the benefit of all." [See Shapleigh v. Baird, 26 Mo. 326, and Bryan v. Brisbin, 26 Mo. 423.] [Also, Pinneo v. Hart, 30 Mo. 561.]

In Jeffries v. Bleckmann, 86 Mo. l. c. 356, in deciding the effect of the statute supra, the court uses this language:

"Our statute, then in force, declared that every voluntary assignment should be for the benefit of all the creditors of the assignors in proportion to their respective claims. It was wholly unnecessary to mention the name or amount of debt of any creditor. Those not mentioned were not prejudiced in the least."

This is clear then, under the statute, that every assignment for the benefit of creditors is for the benefit of all creditors; that anything contained in such instrument which prefers one creditor over another is void, and, that from the proceeds of the assets, all debts and liabilities are to be paid *pro rata*. With such clarification by the statute, what is the effect of the instrument before us?

The debtor, Franklin, conveyed and assigned all his property, except personal effects of little or no value, to be disposed of for the benefit of his creditors, and, in view of our discussion above, for all of his creditors; he further charged himself in the assignment to execute and deliver to the committee any further conveyances which might be found necessary to make the transfer of all his property complete and absolute. The assignee creditors, called "committee," were obligated to pay to the creditors, called "depositors," the net amount realized, and "all payments shall be without preference and in that proportion which the indebtedness of the depositors shall bear to the total amount of the indebtedness deposited." This, taken alone, is an absolute assignment of the assets of Franklin to the payment of his creditors without any reservation or control over such property by Franklin.

The instrument contains no condition of *defeasance;* nor was the estate to be held as security for debts, nor to be reconveyed if and when the debts were paid off by Franklin, or any one for him, but it is a transfer by an insolvent debtor of all his property to certain creditors, or "committee," by whatever name, for the purpose of dividing such estate among those to whom the assignor was indebted.

Whatever may be said of the departures in the instrument, it remains clear that this assignment was not intended to be a deed of trust to secure debts. It was not a transfer to secure debts, but it was, as we understand it, an absolute transfer to raise funds to pay debts. The parties, we must presume, intended the legal result of the document as same is confined to the bounds of the statute. All creditors alike acquired a fixed and settled right in the property.

Appellant says the instrument on its face shows it is not sufficient as an assignment, and presses the following cases as authorities: Grocer Co. v. Miller, 53 Mo. App. 107; Dry Goods Co. v. Grocer Co., 68 Mo. App. 290; Hasse v. Distilling Co., 64 Mo. App. 136.

These cases, we find, considered instruments unlike the one before us. In the Grocer Co. case the document was upon its face a deed of trust to secure debts; in Hasse v. Distilling Co., the instrument on its face showed that it was a transfer of the assets only of one business of the debtor to secure the creditors of that one business, and was clearly intended to be a security for the creditors of that one particular business. In the Dry Goods Co. case, the conveyance was clearly intended to be a security, and the court, from the instrument itself and from the proof as to the surrounding circumstances attending the execution of the paper, found the instrument to be a mortgage.

To further support the objection that the instrument on its face shows an intention that it should not operate as a general assignment, the case In Re Assignment of Howard, 128 Mo. App. 444, 107 S. W. 398, is cited. That case, we think, does not bear the analogy deduced by counsel. There, the instrument was styled "deed of trust," and, as said by the court, "it is quite clear that the grantor intended to prefer the creditors named as parties of the third part and *to secure* their debts instead of making an unconditional application of the property conveyed *to pay* them." (Italics ours.) Other citations given on this point are equally not applicable.

As to the intention of the parties, as evidenced by their conduct in carrying out the terms of the agreement, the record discloses that the assignee committee took steps (September, 1916) to advertise for proof of claims prior to the payment of any dividends, but that the actual advertisement was temporarily deferred, and that it was decided to make "*pro rata* distribution among all creditors of Franklin whether parties to the agreement or not." Notwithstanding this, under our view of the statute, the assignment would necessarily apply to the benefit of all creditors. This sheds light on the intention of the parties, which is made a subject of controversy.

Appellant makes the second point that even if the instrument is construed as an attempted assignment for creditors, it would still be fraudulent and void as to attaching creditors because of several provisions in the instrument which it is alleged are contrary to the spirit of the assignment statute. It is said, first, that the assignment does not require definite disposition of the property or a settlement with creditors, and the recent case of Meston v. Crawford, 190 S. W. 391, is cited. This case turned on the proposition that the grantor expressly reserved certain rights over the claims, and hence it was not an unconditional surrender of the property by the grantor for the creditors. The court in that case did discuss, following the above determination, the provisions which authorized the trustee to continue in the retail store business indefinitely. This, it is clear, was not considered the deciding factor in the case, but even so, the facts were entirely different. There, a retail store was to be continued as before, with clerk hire and other employees; business experience and acumen, or the lack of it, making the assets of worth or worthlessness; other features of continued expense attached to the carrying on of an active business with the hazards attending, might make such procedure exceedingly disastrous to creditors and cause of defeat of a division of the property assigned. In the case now considered, we have a body of land in

Pemiscot county, Missouri, which is to be sold and the money divided. By the employment of agents if necessary is meant to engage someone to look after the land, and properly the engagement of a real estate agent, or agents, to find a buyer. This is all that can be inferred from the instrument and the agreed facts.

We do not want to be understood as making the character of the assets the test, but it is pertinent here to show that there was no business of Franklin to be continued; whatever business or interests he had, touched by these assets, stopped absolutely on the assignment, and the committee were but to sell the land and divide the proceeds equally among the creditors—in fact, the record shows that the land was actually sold and the money collected before the submission of this suit.

This discussion disposes of the application of other cases cited by appellant on this point. The case of Donk Bros. v. Kinealy, 81 Mo. App. 648, involved the quarrying of rock and conducting a quarry business with its many phases of expense and business activities, the operating of the quarry with laborers and teams, etc., the selling of materials and engaging in a complete quarry business, and presented an entirely different situation. This instrument was obviously a deed of trust to secure debts and not an outright assignment.

Without here analyzing all the cases cited by appellant, we have found none to be like the assignment in this case or containing provisions such as are contained in this instrument and which we deem sufficient to constitute it an assignment.

It is again urged that the agreement requires the creditors of Franklin to consent to all of its terms and that all other creditors are excluded from the proceeds of the property conveyed. If our view that the statute places all creditors on an equal footing is correct, then it is not necessary to further consider this objection.

We are referred to the case of Turner v. Drees Hardware & Furniture Co. et al., 227 S. W. 1085. That case again is clearly distinguishable. The assignor

there, the Drees Hardware & Furniture Co., reserved the right to remain in business for six days in which it might dispose of the property attempted to be conveyed, of which Judge BRADLEY said: "One of the essentials of this character of assignments is that it was to be unconditional so far as the assignor is concerned. That is, the assignor cannot by the deed of assignment vest title in the assignee and at the same time retain the right of disposition. The assignor, Drees Hardware & Furniture Co., by paragraph 7, reserved the right to dispose of the property attempted to be conveyed for a period of six days, as will be seen by reference to said paragraph 7."

It is complained that the instrument was neither acknowledged nor recorded, though the record affords us no information on that subject. Even in the event of an omission to acknowledge and record such instrument it would not invalidate same. [Hardcastle v. Fisher, 24 Mo. 70.]

Other objections are directed to excessive powers given the "committee," and their exemption from personal liabilities, and to provisions which in effect single out the creditors adopting the instrument in preference to the creditors who do not become a party to the agreement. As to the powers intended to be given the trustees or committee above and beyond the statute and which our law does not justify, it must be held that such powers do not exist, nor do such exemptions exist, and as to the matter of preference we have already expressed ourselves.

Industry of counsel on both sides presents a long line of authorities from text and adjudications, some of which overlap. The usual assignment in form and latitude; the extra statutory powers therein attempted to be conferred upon the committee of creditors, all gave rise at the outset to grave doubts in our minds as to a proper classification of this instrument, yet under an analysis in the light of the statutes and authoritative decisions we find, notwithstanding its many objectiona-

ble features, that same is an unconditional, absolute transfer of property without defeasance, which was to be unconditionally applied to pay the debts of Franklin. And being so, it is sufficient as a statutory assignment for creditors.

The record shows the parties endeavoring to treat the instrument as a general assignment under the statute and creditors generally relying upon this agreement as such and depending upon such for an apportionment of the liquidated assets equally among all creditors. Plaintiff does not complain of the manner or conduct of assignee, or that the property is being dissipated, or that settlement is not being speedily made, or that distribution is not to be equal. On the contrary, by this attachment he seeks to be paid in full as against other creditors, and in so far as the record discloses this course, if correct, may result in other creditors with advanced or attached claims consuming this estate and thereby destroying the very purpose of our assignment statute, which was drawn with the view of giving to each creditor his just proportion of whatever property the insolvent debtor has left to turn over to pay his debts, and no more; and while this is not determinative of the result reached, it must be considered.

The appellant, or any complaining creditor, can successfully insist that the trust herein created shall be properly executed. If there has been an assumption or exercise of powers by the "committee" beyond that contemplated by statute to harm the creditors' interests, or if the trustees have not faithfully carried out their trust, then the courts are as available to give relief here exactly as they are available to give relief from abuses or derelictions of an assignee under an assignment which is without question entirely within the bounds of the statute.

We therefore conclude that the trial court correctly interpreted and applied the law of the case, and accordingly the judgment is affirmed.

*Becker, J.,* concurs; *Allen, P. J.,* not sitting.